222 N.J. Super. 457 (1988)
537 A.2d 700
JOHN BELLARDINI, PLAINTIFF-APPELLANT,
v.
PAUL P. KRIKORIAN, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1987.
Decided January 7, 1988.
*458 Before Judges PETRELLA and ASHBEY.
Timothy L. Barnes argued the cause for appellant (Barnes & Barnes, attorneys; Timothy L. Barnes on the brief).
W. Stephen Leary argued the cause for respondent (W. Stephen Leary of counsel; John Haschak III, on the brief).
*459 PER CURIAM.
This is a medical malpractice appeal in which the trial judge ruled on a so-called "in limine" motion by defendant Paul P. Krikorian, M.D. just before the jury was to be chosen. In a pre-trial order the judge barred plaintiff's liability expert from testifying on the ground that he was relying on his own personal opinion and hence his report constituted a "net opinion." As plaintiff was thus left unable to prove his case on liability, his complaint was dismissed. We reverse and remand for trial.
Defendant physician treated plaintiff's mother in 1962 for obesity and depression, and prescribed various medications, including Tofranil, 25 mg. three times a day. The prescription provided for 100 pills with four refills. Plaintiff's mother took that drug as prescribed from September 1962 through January 1963, during which time she remained under defendant's care. During the course of treatment of plaintiff's mother, Krikorian performed one pregnancy test, reported as negative, on September 22, 1962. He never repeated that test, despite the fact that plaintiff's mother missed her December and January menstrual periods.
Plaintiff was conceived while his mother was on the prescribed Tofranil medication. He was born on July 2, 1963 with numerous birth defects, allegedly the result of his mother's ingestion of Tofranil. Plaintiff retained an expert who prepared a report which concluded that Krikorian's actions were below accepted medical standards and constituted a deviation from acceptable medical standards at the time he was treating plaintiff's mother. The report pointed out that she was in her childbearing years and defendant did not take adequate steps to assure that plaintiff's mother was not pregnant when he prescribed the drug, or consider her possible pregnancy thereafter and advise her of the dangers of an adverse reaction from the drug. Plaintiff's attorney submitted his expert's report dated *460 August 30, 1985 to defense counsel during the course of discovery. That report stated, inter alia:
It is my opinion upon completion of my review of Dr. Krikorian's deposition that the physician did perform his duties below accepted medical standards because at no time was he completely satisfied that this patient was not pregnant. Since the patient was not on birth control devices as far he knew she was able to conceive, therefore, it is my opinion that it was below accepted medical standards for the physician to continue to prescribe such medicines since the patient herself apparently was doing nothing to prevent pregnancy nor was he completely satisfied that she was not pregnant. Therefore, the possibility and even the probability that these drugs might cause teratogenesis[1] and fetal harm was significant.
It is my opinion from reading John Bellardini's deposition that the malformations that he has suffered have been considerable and certainly emotionally damaging.
In summary, upon completion of my review of these additional records my initial opinions [sic] that Dr. Krikorian performed his duties below accepted medical standards by prescribing drugs while not certain that the patient, Loretta Bellardini, was not pregnant consisted of performing his duties below accepted medical standards. Although initially a pregnancy test was taken and shown to be negative it is my opinion that this did not absolve Dr. Krikorian of his guilt in continuing to prescribe medications that were teratogenic since the patient could become pregnant at anytime thereafter. Furthermore, failing to repeat the pregnancy test several times while prescribing these drugs was a deviation from accepted medical standards.
Plaintiff's expert was deposed and stated unequivocally in response to defense counsel's question that defendant violated "the standard of medicine which existed in 1962." The plaintiff's witness said in those depositions that it was essential for a doctor to question and inquire about pregnancy or possible pregnancy when a drug that is known to affect fetal development in the first trimester is prescribed. Defense counsel pressed the witness at the deposition with respect to the existence of the standard in 1962 and asked "can you prove that to me?" The witness answered:
No, sir. I don't have any manuals that would state that but it was known at that time that drugs could affect a first trimester of pregnancy, I would have to go back and get literature and it can be found and I will provide it if necessary.
*461 Defense counsel requested such information and apparently none was submitted. Defendant argued in his motion in limine, initially brought without papers or supporting briefs, that plaintiff's expert failed to establish the proper standard of care in that they were his "personal opinions" and a net opinion contrary to Buckelew v. Grossbard, 87 N.J. 512, 524 (1981).[2] Defendant argued that these opinions were unsupported by any corroborating evidence and thus the "bare conclusions" were net opinion. Counsel later filed memoranda with the trial court and argued the matter on two further occasions. Defendant also appeared to rely on the fact that in 1962 plaintiff's expert was just finishing college and had not even entered medical school. The trial judge was ultimately persuaded by defendant's arguments.
The trial judge in the instant matter appeared at one point to erroneously consider the matter as a question of the competency of plaintiff's witness since he was not in medical school at the time of the alleged malpractice.[3] Defendant seemed to argue that it was not a matter of competency, but rather a lack of evidential support, although his brief seems to imply the former argument as well. In any event, the judge at a March 19, 1987 hearing on the defendant's application concluded that the net opinion rule required a liability expert to provide "evidential support, experiential or the like," (87 N.J. at 529) pursuant to Buckelew, and ruled inadmissible the testimony of plaintiff's expert witness on liability.
Plaintiff distinguishes Buckelew primarily on the grounds that it deals with proximate cause. He argues that the expert whose testimony was disallowed was offered only to establish a *462 standard of care in 1962 and not to provide the causal connection which was to be furnished by a different doctor.
In our view, defendant's reliance on the quotation, "evidential support, experiential or the like," from Buckelew is misplaced. Counsel relied on the requirement for evidential support, but such evidence is not limited to treatises or any type of documentary support. In Buckelew the Supreme Court concluded that it had been error for the trial court not to apply res ipsa loquitur. Ibid. The court there noted that for an opinion to be admissible under Evid.R. 56(2)(a), it must be based "primarily on facts, data or other expert opinion established at the trial...." 87 N.J. at 525. After pointing out that Parker v. Goldstein's underpinnings are no longer viable, Id. at 525 n. 3, the court then commented:
There must be some evidential support, experiential or the like, offered for the expert's conclusion that the medical community recognized that the mishap in question would not have occurred but for the physician's negligence.... [87 N.J. at 529.]
Obviously, the support for such expert opinion can be based on what the witness has learned from personal experience or from persons with adequate training and experience. Moreover, we point out that the quoted language refers directly to testimony of the plaintiff's expert in Buckelew who opined that "it is common knowledge within the medical community that the type of accident that took place in this case [accidental cutting of the bladder] does not ordinarily occur in the absence of the surgeon's negligence." Id. at 528. In Buckelew the court was concerned with the applicability of the res ipsa loquitur doctrine. Plaintiff correctly notes that the court in Buckelew did not find a "net opinion" and was discussing proximate cause and its application to the res ipsa loquitur doctrine, rather than imposing additional requirements before an expert could testify with respect to the appropriate medical standard of care. This is clarified by the language "mishap in question would not have occurred." Id. at 529.
*463 Expert testimony may be furnished by a person whose knowledge, training or experience are deemed qualified to express their opinions on medical subjects. Carbone v. Warburton, 11 N.J. 418, 425 (1953); Hudgins v. Serrano, 186 N.J. Super. 465, 474 (App.Div. 1982). See generally, Schueler v. Strelinger, 43 N.J. 330, 345 (1964); Sanzari v. Rosenfeld, 34 N.J. 128, 136 (1961); Toy v. Rickert, 53 N.J. Super. 27, 32 (App.Div. 1958). The requirements for expert qualifications are in the disjunctive. The requisite knowledge can be based on either knowledge, training or experience. Of course, an expert is not required where the matter falls within common knowledge. See Buckelew v. Grossbard, supra (87 N.J. at 529); Steinke v. Bell, 32 N.J. Super. 67, 70 (App.Div. 1954). Expert testimony is admissible where the witness has peculiar knowledge or experience not common to the world which renders his opinion an aid to the court or jury in determining the question in issue. See Nesta v. Meyer, 100 N.J. Super. 434, 442 (App.Div. 1968).
It has long been established that an expert may rely on his own knowledge, as well as on facts supplied to him by others. Of course, "the weight to which an expert opinion is entitled can rise no higher than the facts upon which the opinion is predicated." Johnson v. Salem Corp., 97 N.J. 78, 91 (1984) (quoting N.J. Rules of Evidence Comment 7 to Evid.R. 56). See Parker v. Goldstein, supra (78 N.J. Super. at 484). See also Evid.R. 56(2). Obviously the expertise of a witness may be based on knowledge or experience acquired over a period of years. See Correa v. Maggiore, 196 N.J. Super. 273, 282 (App. Div. 1984).
A doctor who entered medical school after the asserted occurrence of the malpractice may still be able to express an opinion as to what accepted medical standards in the profession and in the community were at the time of the occurrence. Presumably text books and treatises used or available to the witness would have been available the year before he entered medical school or even earlier. Moreover, the expert is not required to produce a treatise to support his opinion. Aside *464 from whether it was common knowledge (either to the medical profession or the general public) in 1962 and earlier that medications ingested by a pregnant woman might pass through the placenta to a fetus, it may well be that since defendant administered a pregnancy test, he knew and appreciated the risk of treating a pregnant woman with Tofranil. In any event, the issue here was whether defendant's methods of testing plaintiff's mother for pregnancy and monitoring her status fell below accepted medical standards. Plaintiff's expert did not state only bare conclusions, he advanced adequate reasons for his opinion to allow the issue to be submitted to a jury.
We have noted an increase in in limine rulings on evidence questions in recent times. Such rulings are often in the abstract and not in the context of facts adduced at trial. Requests for such rulings should be granted only sparingly and with the same caution as requests for dismissals on opening statements. See Passaic Valley Sewerage Com'rs. v. Geo. M. Brewster, etc., Inc., 32 N.J. 595, 605-607 (1960); Nelson v. Great Atlantic & Pacific Tea Co., 48 N.J. Super. 300, 305 (App.Div. 1958).
We reverse and remand for trial.
NOTES
[1] "Teratogenesis" is defined in Schmidt's Attorney's Dictionary of Medicine, (1983) as the development of a severely deformed fetus or infant.
[2] Buckelew found no net opinion, but had cited the trial court's reliance on Parker v. Goldstein, 78 N.J. Super. 472 (App.Div. 1963), certif. den. 40 N.J. 225 (1963), which held that a "net opinion" was insufficient to warrant submitting a malpractice issue to the jury.
[3] The witness entered medical school in 1963.