725 A.2d 51 (1999)
319 N.J. Super. 174
Marian TAYLOR, Plaintiff-Respondent and Cross-Respondent,
v.
Louis DeLOSSO and the Design Collaborative Architects and Planners, P.A. (DECO), Defendants-Appellants and Cross-Respondents, and
Sabatino Architects, Defendants, and
William M. Kemp, Defendant-Respondent and Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1999.
Decided March 9, 1999.
Robert D. Thompson, Cherry Hill, for defendants-appellants and cross-respondents (Pennington & Thompson, attorneys; Mr. Thompson and William H. Dengler, Jr., on the brief).
Jeffrey S. Intravatola, New Brunswick, for defendant-respondent/cross-appellant (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Mr. Intravatola, on the brief).
Dara A. Quattrone, Pleasantville, for plaintiff-respondent/cross-respondent (Westmoreland, Vesper & Schwartz, attorneys; Ms. Quattrone and Katherine M. Morris, on the brief).
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.
The opinion of the court was delivered by *52 HAVEY, P.J.A.D.
Defendants Louis DeLosso and The Design Collaborative Architects and Planners, P.A. (DECO) appeal from a judgment entered on an $11,300 jury verdict in favor of plaintiff. Defendant William M. Kemp cross-appeals from the trial judge's order denying his summary judgment motion and the judge's denial of his motion for involuntary dismissal pursuant to R. 4:37-2. On appeal, DeLosso and DECO argue: (1) plaintiff's expert's testimony was a net opinion and thus insufficient to establish a prima facie case of professional negligence against them; (2) DECO's and DeLosso's reliance on the Kemp survey was in compliance with the parties' contract and consistent with accepted standards of architectural practice; (3) plaintiff's damages were not proximately caused by the conduct of DeLosso and DECO; and (4) DeLosso and DECO were entitled to a new trial because of evidentiary errors committed by the trial judge. We reverse the judgment in plaintiff's favor and remand for the entry of a judgment of dismissal. We dismiss Kemp's cross-appeal as moot.
In 1985, plaintiff purchased a structure on Washington Street, Cape May, for the purpose of operating a beauty salon and guest house. She contacted William M. Kemp, a professional land surveyor, to prepare a survey of the property for submission to the Cape May Zoning Board of Adjustment for a special reasons variance and site plan waiver in order to utilize the structure as a beauty shop. The survey dated February 12, 1985, was submitted to the Zoning Board. The survey located a thirty-inch diameter maple tree on the site. The Zoning Board denied plaintiff's request for a site plan waiver.
Plaintiff thereafter contacted defendant Sabatino Architects to prepare a full site plan. DeLosso, employed at the time by Sabatino Architects, prepared a site plan dated February 10, 1986. DeLosso testified that he relied on the Kemp survey "as the basis" for the Sabatino site plan because it contained all of the information required by the City of Cape May. Specifically, DeLosso relied on the survey for the outline of the lot and location of physical features, including the maple tree.
After the Zoning Board denied plaintiff's application for a special reasons variance, she filed an action in lieu of prerogative writs, which resulted in a remand to the Zoning Board with direction that the application be reconsidered. According to the record, plaintiff received her variance approval by "default." She thereafter contacted DeLosso in 1989 requesting his appearance before the Cape May Planning Board on her site plan application. DeLosso had since been hired by DECO. On April 6, 1989, DeLosso appeared at the hearing and the Board granted site plan approval, based on the Sabatino plan.
On November 20, 1990, plaintiff again contacted DeLosso for the purpose of revising the site plan to reflect a proposed deck, a parking and lighting plan, and a handicap ramp. Pursuant to a November 28, 1990 written agreement between plaintiff and DECO, plaintiff agreed to "furnish a legal description and certified land survey of the site, ... and complete data pertaining to existing buildings, other improvements and trees...." Plaintiff thereupon sent DeLosso the February 10, 1986 Sabatino site plan. According to DeLosso, he did not use a land survey in preparing the revised site plan, nor did he personally inspect the property. De-Losso completed the DECO site plan on April 16, 1991, certifying that he had supervised the preparation of the site plan and that all dimensions and information set forth thereon were correct. The Planning Board approved the DECO site plan on September 4, 1991.
Construction of the structure's alterations and revisions to the site layout commenced in December 1991. During construction, plaintiff's contractor determined that the thirty-inch diameter maple tree was actually located in the proposed driveway area, rather than as shown on the DECO site plan. The contractor was forced to stop construction. Plaintiff was advised by the City that she needed a new site plan.
In December 1991, plaintiff contacted Joseph Courter, an architect, to "start from scratch" and to prepare a new plan. Plaintiff gave Courter Kemp's February 12, 1985 survey *53 and DECO's April 16, 1991 revised site plan. Based on these documents and an inspection of the site, Courter determined that the plans had mislocated the maple tree. According to Courter, the Kemp survey and DECO site plan situated the tree between eleven and fourteen feet from where it actually stood. Courter thereupon prepared a new site plan on January 14, 1992. The Planning Board approved the plan on July 29,1992.
Courter charged plaintiff $5,814 for his services in connection with preparation of the revised site plan. According to plaintiff, she was unable to open her shop until October 1992, and suffered approximately $12,128 in lost earnings because she was not able to hire a second stylist. Moreover, she paid $1,625 to her contractor after construction was interrupted for reviewing site plans with zoning officers and appearing before the Board to obtain the new site plan approval.
Plaintiff called Courter as her expert witness. It was his opinion that "[i]n working in a small parking lot where there's a 30 inch diameter tree in the proximity, I would think it would be prudent to determine the location of that tree, fairly accurately." Courter concluded that DeLosso's failure to accurately denote the thirty-inch diameter tree violated that standard of practice. He also opined that "a prudent architect would go to the site and make sure that he knows where that tree is, because all his work is going to revolve around that tree." Courter also testified that Kemp's 1985 survey was prepared for a special reasons variance and site plan waiver. Therefore, there was no need to include vegetation in the survey, and thus Kemp's mislocation of the maple tree had no impact on the validity of the survey. According to Courter, unless specifically requested to do so, land surveyors do not indicate vegetation on a survey.
At the close of plaintiff's case, DeLosso and DECO moved to dismiss. They argued that Courter's testimony was a "net opinion" since he made no reference to any recognized standard, written or oral, requiring an architect to make a site inspection prior to preparation of a site plan. The trial judge recognized that the matter presented a "close question." However, he denied the motion, observing:
Mr. Courter said that the reasonably prudent professional would either order a survey when confronted with the situation that Mr. DeLosso was confronted with here, or would look to the site himself to determine whether or not the tree was properly placed.
In my view, that articulates a sufficient basis on which to deny this motion to permit this case to go to the jury because the jury can consider whether that is a standard or it isn't a standard and whether or not it has been violated.
However, the judge granted Kemp's motion for involuntary dismissal of plaintiff's case. Citing Courter's testimony that Kemp was not required to denote vegetation on the survey, the judge concluded that there would be "no basis on which this jury could conclude at least as to the plaintiff's claim, that Mr. Kemp was negligent."
At the close of defendants' case, Kemp moved for an involuntary dismissal of DeLosso's and DECO's cross-claim against him on the basis that no expert testimony was presented establishing a deviation of accepted standards of care on Kemp's part. The judge denied the motion, concluding that expert testimony was not necessary to show that a misplaced thirty-foot diameter tree would cause damages.
The jury returned a verdict in plaintiff's favor in the amount of $11,300 against De-Losso and DECO, and a no cause verdict in Kemp's favor.
In a professional negligence case, the standard of care must normally be established by expert testimony. Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985); F.G. v. MacDonell, 291 N.J.Super. 262, 272, 677 A.2d 258 (App.Div.1996), aff'd in part and rev'd in part, 150 N.J. 550, 696 A.2d 697 (1997). This is so because a jury should not be allowed to speculate, without expert testimony, in an area where laypersons have insufficient knowledge or experience. Kelly v. Berlin, 300 N.J.Super. 256, 268, 692 A.2d 552 (App.Div.1997). Moreover, opinion testimony "must relate to generally accepted ... *54 standards, not merely to standards personal to the witness." Fernandez v. Baruch, 52 N.J. 127, 131, 244 A.2d 109 (1968). In other words, plaintiff must produce expert testimony upon which the jury could find that the consensus of the particular profession involved recognized the existence of the standard defined by the expert. Ibid. It is insufficient for plaintiff's expert simply to follow slavishly an "accepted practice" formula; there must be some evidential support offered by the expert establishing the existence of the standard. Buckelew v. Grossbard, 87 N.J. 512, 528-29, 435 A.2d 1150 (1981). A standard which is personal to the expert is equivalent to a net opinion. Crespo v. McCartin, 244 N.J.Super. 413, 422-23, 582 A.2d 1011 (App.Div.1990).
The crux of Courter's testimony was that DeLosso deviated from accepted standards of architectural practice by failing to make a site inspection of plaintiff's property to verify the location of the thirty-inch diameter maple tree when he prepared the April 16, 1991 DECO site plan. It was his view that when a plan involves a small site, a "prudent architect would go to the site and make sure that he knows where that tree is, because all his work is going to revolve around that tree."
The problem is that Courter presented no authority supporting his opinion. No reference was made to any written document, or even unwritten custom or practice indicating that the consensus of the architectural community recognizes a duty to make a site inspection for "small sites." Courter simply explained:
I'm just usingI think general care in doing a small parking lotI mean, I wasn't at the time referring to standards in my mind. I was referring to just the general care shown on a small project.
....
There's no standard that says on a small site, an architect has to verify the survey.
Ultimately, Courter acknowledged that it was his personal opinion that "it would be [a] prudent approach" to make such a site inspection.
Citing Bellardini v. Krikorian, 222 N.J.Super. 457, 537 A.2d 700 (App.Div.1988), plaintiff argues that Courter was able to establish the pertinent standard of care based solely upon his personal experience and training. Bellardini was a medical malpractice case, where the defendant doctor in 1962 prescribed the drug Tofranil to treat plaintiff's mother for obesity and depression. Id. at 459, 537 A.2d 700. Plaintiff was born with birth defects allegedly resulting from the mother's ingestion of the drug. Ibid. In his written report and deposition, plaintiff's expert, who apparently was licensed to practice medicine after 1962, testified that based on the 1962 medical standards a physician should not prescribe Tofranil without continued testing of a female for pregnancy because it was then recognized that Tofranil affected fetal development in the first trimester. Id. at 460-61, 537 A.2d 700. The expert admitted that he had no "manuals" to support his opinion as to the medical standard of care in 1962. Id. at 460, 537 A.2d 700. Noting that "an expert may rely on his own knowledge, as well as on facts supplied to him by others," the Bellardini court concluded that the expert could testify as to a standard of care based on his training and experience. Id. at 463, 537 A.2d 700. The court observed:
A doctor who entered medical school after the asserted occurrence of the malpractice may still be able to express an opinion as to what accepted medical standards in the profession and in the community were at the time of the occurrence. Presumably, text books and treatises used or available to the witness would have been available the year before he entered medical school or even earlier.

[Ibid.]
Apparently, in concluding that the expert's testimony was not a net opinion, the Bellardini court assumed that plaintiff's expert had derived his knowledge of the 1962 standard of care based in part on his access to "text books and treatises ... available to the witness...." Ibid. No such assumption can be made here, given the total absence in Courter's testimony of reference to any text book, treatise, standard, custom or recognized practice, other than his personal view.
*55 Courter also made reference to various administrative rules regulating the preparation of site plans by architects. The first, N.J.A.C. 13:27-6.5(a) provides that:
The architect in responsible charge shall sign, date and seal all original tracings of construction drawings and the title page of the specifications prepared by the architect or under his or her supervision on the original tracing.
Courter testified that by signing the April 16, 1991 DECO plan, DeLosso and DECO became "responsible" for its accuracy.
Firstly, the rule refers to "construction drawings"; it is unclear whether it applies to site plans at all. Secondly, even assuming that DeLosso and DECO were "responsible" for the accuracy of the site plan, the rule does not state that an architect must make a site inspection, or may not transfer site information provided by a licensed surveyor onto the site plan. In fact, N.J.A.C. 13:27-7.2(a)1 provides that existing conditions and physical features of the site denoted on a survey "may be transferred to the site plan if duly noted as to the date of the survey, by whom, and for whom." DeLosso "transferred" the physical features of the site depicted on Kemp's survey to the Sabatino site plan and from that site plan to the DECO plan dated April 16, 1991. Although the DECO site plan did not "duly" note Kemp's survey, it cannot be seriously argued that that technical error was a proximate cause of plaintiff's damages.[1] Courter himself acknowledged he transferred physical features depicted on the Kemp survey to his site plan prepared for plaintiff and did not denote that fact on the plan as required by the rule.
More importantly, Courter admitted during cross-examination that an architect is not required to check the accuracy of a survey given to him by a client, and is entitled to rely on the survey in preparing a site plan. In fact, the contract between plaintiff and DECO addresses this point as follows:
OWNER'S RESPONSIBILITY
1. The Owner shall furnish a legal description and certified land survey of the site, giving as applicable, grades and lines of streets, alleys, pavements and adjoining property; right-of-way, restrictions, easements, encroachments, zoning, deed restrictions, [boundaries] and contours of the site; locations, dimensions and complete data pertaining to existing buildings, other improvements and trees; and full information concerning available service and utility lines both public and private, above and below grade including inverts and depths.
....
5. The services, information, surveys and reports required by Paragraphs 1 through 4 inclusive shall be furnished at the Owner's expense and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

[Emphasis added.]
This language generally tracts a clause contained in form B-141 of the American Institute of Architects Standard Form Agreement (SFA), which provides:
4.5 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, ... locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade....
....
4.9 The services, information, surveys and reports required by Paragraph 4.5 through 4.8 shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.
Charles Surmonte, defendants' expert, testified that these provisions in the SFA were essential because an architect, in preparing a site plan, necessarily relies on surveys to *56 locate the physical features on the lot in question. This is so, according to Surmonte, because by law architects cannot denote such features on a site plan and thus depend on their locations as depicted by a licensed surveyor. Surmonte testified that form B-141 represents an accepted standard of care in the architectural community.
On cross-examination, plaintiff's expert Courter agreed that form B-141 of the SFA set forth an applicable standard defining the conditions of an architect's services to a client. Thus, Courter essentially agreed that, pursuant to form B-141, the architect had the right to rely on a survey furnished by the client. He also acknowledged that the B-141 standard makes no exception for "smaller sites," such as plaintiff's lot.
Courter explained, however, that the "reliance" referred to by form B-141 meant such features as metes and bounds, dimensions of buildings and utilities, features required by law to be depicted on a survey. He pointed out that "normally" a survey "would not show vegetation," including trees. Whether or not this assertion is correct, the survey in question here did in fact depict the mislocated thirty-inch diameter tree and, in accordance with form B-141, defendants were entitled to rely on that depiction.
Finally, plaintiff argues that form B-141 is inapplicable because DeLosso testified he did not rely on the Kemp survey when preparing the DECO April 16, 1991 site plan. However, even though DeLosso made no reference to the survey in preparing the DECO revisions, he testified that he relied on the Kemp survey "as a basis" for the Sabatino site plan, including the location of the thirty-inch diameter maple tree. He stated further that when plaintiff approached him in 1990 to revise the Sabatino site plan, plaintiff obtained the Sabatino site plan and gave it to DeLosso for the purpose of revising it. DECO's revised site plan denotes the Sabatino site plan as the source of information relied on by DECO. In short, the Kemp survey was the genesis of the mislocation of the thirty-inch diameter tree, and DeLosso and DECO relied on that survey by their reliance on the Sabatino site plan.
We conclude that the "reliance" provisions in form B-141 of the SFA, and in the written agreement between plaintiff and DECO, gave defendants an unqualified right to rely on the Kemp survey and Sabatino site plan in preparing their April 16, 1991 revisions. It also nullifies Courter's unsupported conclusion that defendant had a duty to make a site inspection to check the accuracy of the physical features contained in the Kemp survey. We therefore conclude that Courter's testimony constituted a net opinion, and defendants were entitled to a judgment of dismissal as a matter of law.
Because our reversal of the judgment in plaintiff's favor leaves the jury verdict of no cause in favor of Kemp undisturbed, we need not address Kemp's arguments raised on his cross-appeal.
Reversed and remanded for the entry of a judgment of dismissal in favor of DeLosso and DECO.
NOTES
[1] DECO's site plan did note the Sabatino site plan as the source of some of the physical features contained on the plan.