# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3196-17T4

DEPARTMENT OF CHILDREN
AND FAMILIES,

      Petitioner-Respondent,

v.

T.G.,

      Respondent-Appellant.

_____

      Argued May 30, 2019 – Decided June 20, 2019

      Judges Accurso, Vernoia and Moynihan.

      On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Docket No. 14-0941.

      Victoria Danielle Miranda argued the cause for appellant (Williams Law Group, LLC, attorneys; Allison C. Williams, of counsel and on the briefs; Victoria Danielle Miranda, on the briefs).

      Alicia Y. Bergman, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Christina Anne Duclos,
on the brief).

PER CURIAM

In this appeal, appellant T.G.[1] challenges a Department of Children and Families, Division of Child Protection and Permanency (Division), final agency decision affirming a substantiated finding that he sexually abused his daughter's twelve-year-old friend, Olive, during a sleepover at his home. Because the Division's findings are based on expert testimony that constitutes an inadmissible net opinion, we reverse and remand for further proceedings.

I.

Following a July 2014 referral and subsequent investigation, the Division notified T.G. he was substantiated for sexual abuse and molestation of Olive. He appealed the determination and the matter was referred to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). The evidence showed that immediately following the referral, Division caseworker Tracey Lawrence spoke to Olive, who reported that she slept at

---

[1] We use initials and pseudonyms to identify the parties, children and their families and others to protect the confidentiality of the matters related to the alleged child abuse. See N.J.S.A. 9:6-8.10a.

T.G.'s home in or around March 2014 with her close friend, T.G.'s daughter Josephine, and that T.G. touched her vaginal area during the evening.

Lawrence later spoke to Olive and her mother, Alice. Olive further explained that during the sleepover, T.G. came into the room where Olive and Josephine laid on separate couches. During his first two visits, T.G. put his hands under Olive's pants and touched her vaginal area until she shifted on the couch. On the last occasion, Olive shifted before T.G. touched her and he said "good night girls" and left the room. Olive reported that she recalled a camera flash while T.G. was present, and believed he may have taken a picture of her. According to Olive, Josephine was asleep during the times T.G. was in the room. Olive said she was scared to report what occurred because she feared for what would happen to Josephine.

Alice told Lawrence that Olive disclosed T.G.'s actions to her and Olive's father, Matt, during a June 2014 vacation. Olive insisted on wearing shorts under a dress that Alice requested Olive wear to a restaurant, and during the discussion concerning Olive's demand, she told her parents what T.G. did during the sleepover. After Olive's disclosure, Alice recalled changes in Olive's behavior that she believed were now explained, including Olive putting on shorts under dresses, hiding, locking the bathroom door, refusing to go to

3

Josephine's home and making excuses for her decision not to go, and asking Josephine to stay over at their house instead of going to Josephine's home as she had often done in the past.

Lawrence also interviewed Olive's older sibling, Carl, who was in the process of transitioning from female to male. The evidence showed Olive was supportive of Carl's transition, which had been ongoing for more than two years prior to Olive's disclosure. Carl, who is many years older than Olive, was not on the June 2014 vacation during which Olive made the disclosure.

Lawrence also interviewed Matt, who explained that during the months prior to Olive's disclosure she mentioned on several occasions that she had something to tell her parents, but would then "brush it off" and not say anything. He also stated that Olive made the disclosure during the vacation, and that he was in disbelief because his and T.G.'s families had grown close over the years.

Olive participated in a recorded forensic video interview on July 23, 2014. She again reported what she alleged occurred during the sleepover, adding that T.G. also touched her breasts under her shirt and that she remembered hearing the click of a camera. Olive reported that following the incident, she avoided T.G.'s house, and went over only once for Josephine's birthday sleepover but wore both shorts and sweatpants on that occasion "so nothing could happen."

A-3196-17T4

The video recording of the forensic interview was admitted in evidence and played during the hearing.

Karena Ferrer, M.A., is employed by the Regional Diagnostic and Treatment Center, and was qualified as an expert in mental health with a subspecialty in child abuse and neglect. She performed a psychosocial evaluation of Olive on August 11, 2014, "to assess for sexual abuse and related symptomatology."

Ferrer testified that Olive reported T.G.'s actions to her, and that Olive was initially scared to disclose what occurred because she did not think anyone would believe her. Ferrer considered the results of a child behavioral checklist that Alice completed, the Youth Self Report, Trauma Symptom Checklist for Children and Beck Youth Inventory that Olive completed, a transcript of Olive's forensic interview, Division records and Alice's reports concerning Olive's behavior in formulating her diagnostic impression that Olive experienced sexual abuse. Ferrer acknowledged the checklists and inventory did not reveal any symptomatology, but explained that not every child who is a victim of sexual abuse is "highly symptomatic." Her opinion that Olive experienced sexual abuse, which she offered to a "professional degree of certainty," was based on

the consistency of Olive's reporting, Olive's lack of a motive to lie, Alice's account of Olive's behavior and Division records.

Division caseworker Natalie Cabrera testified that the Division opened a second investigation on September 17, 2014, to determine whether Josephine, who was Olive's age, had been the victim of any sexual abuse. Cabrera interviewed Josephine twice, and Josephine denied any abuse. The Division rendered a determination that its investigation of abuse against Josephine was "unfounded."

Cabrera also interviewed T.G. and his wife, Diane, and explained the nature of the allegations against T.G. but initially did not disclose that Olive made the allegations. T.G. denied ever touching any child during Josephine's sleepovers with her friends. Diane similarly denied that T.G. engaged in such conduct and that he ever had an opportunity to do so. Cabrera described T.G. as shocked when he was informed that Olive made the allegation he sexually abused her.

Matt testified regarding his family's close relationship with T.G.'s family and Olive's disclosure of the sexual abuse. Matt explained that Olive was concerned the disclosure would affect her friendship with T.G.'s daughter. He further noted changes in Olive's behavior including her refusal to go to T.G.'s

A-3196-17T4

home to see Josephine, and her refusal to go to T.G.'s vacation home when T.G. came to pick her up with Josephine. He testified Olive did not want to attend a birthday sleepover at T.G.'s house and agreed to go only after some prodding, but called early the next morning for Matt to come get her. Matt also explained that when Olive was asked why she no longer wanted to go to T.G.'s house as she had routinely done in the past, she said T.G. and his wife argue a lot and she did not like being there. Matt testified he had never known T.G. and his wife to argue. Matt also explained that Olive was distressed about seeing T.G. at a summer camp that Josephine was also attending. Matt testified Olive "was unable to sleep, crying, [and] very upset" the night before she was scheduled to arrive at the camp and said she was afraid she would see T.G.

T.G. testified, described his family's relationship with Olive's family, the girls' sleepover routines, and denied the allegations.

Dr. Mark Singer, Ph.D., testified on T.G.'s behalf and was accepted as an expert in sexual abuse and child abuse cases. He reviewed the Division's reports, Olive's psychosocial evaluations and forensic interview, and interviewed T.G., Diane and Josephine. Dr. Singer utilized the Adult Adolescent Parenting Inventory, Second Edition, and the Melan Clinical Multi-Auxiliary Inventory, Third Edition, and concluded T.G. understands and values children's needs, is a

somewhat secretive individual reluctant to disclose personal information and likely to engage in moralistic, perfectionistic thinking, and that nothing in the psychological testing "correlated significantly with what we know about . . . child sex offenders." T.G. also completed a Sexual Violence Risk Assessment, and Dr. Singer concluded T.G. did not have characteristics associated with known violent sex offenders. He concluded, within a reasonable degree of psychological certainty, that T.G. did not have the characteristics found in sexual offenders and was a "low risk" for such behavior.

Dr. Singer did not interview or meet with Olive. He admitted her behaviors could "be seen in children who have been exposed to inappropriate sexual behavior," but noted alternative explanations for her conduct could exist.

In the ALJ's written decision, she found that Alice, Diane, Josephine and Carl lacked knowledge concerning T.G.'s alleged sexual abuse of Olive. The ALJ found Matt credible and that his testimony was "believable." The ALJ found "no credible evidence" supporting T.G.'s assertion that Carl's transition was a "factor" in Olive's assertions against T.G. The ALJ further found T.G. was "highly motivated to deny the charges against him," and that Olive was credible because she "had more to lose than gain in stating that . . . her best friend's father had inappropriately touched her."

The ALJ also found Ferrer's testimony credible and persuasive. He found Ferrer "was accepted without objection as an expert in mental health with a sub-specialty in child abuse and neglect, credibly testified that [Olive's] delay in disclosing did not indicate that her allegations were less than truthful" and Olive's father and mother both indicated she had "hesitat[ed] to disclose something" for some time. The ALJ further determined that Dr. Singer "acknowledged that trauma can influence behavior and that a child might not want to remember an event." The judge found both experts noted "children can often not accurately state when a past event occurred."

The ALJ found Ferrer's opinion "that [Olive] experienced sexual abuse based upon the consistency of [Olive's] statements corroborated by her parent's statements as to [Olive's] behavior, information in the [Division] records and information obtained during the [Division] investigation, to be persuasive." Conversely, the judge found "Dr. Singer's criticism of Ferrer for relying upon the information provided by [Olive] and her mother and the tests she administered . . . as disingenuous" because Dr. Singer used similar tests and also relied on self-reporting by T.G., Diane and Josephine.

The ALJ found Olive's statements were materially consistent, her credibility was enhanced by her failure to recant, and her statements that T.G.

inappropriately touched her were credible and corroborated by evidence including Olive's behavior. The ALJ found Dr. Singer's opinion that T.G. was likely not a sexual offender was unpersuasive. The judge concluded the Division proved by a preponderance of the credible evidence that T.G. sexually abused Olive by touching her under her clothes, including her vaginal area, while Olive was sleeping overnight at T.G.'s home.

The Division issued a final agency decision adopting the ALJ's findings and decision and affirming the substantiated finding of sexual abuse. This appeal followed.

## II.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). A reviewing court will presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). Thus, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In

re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). "[T]he test is not whether an appellate court would come to the same conclusion . . . but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). The court "may not vacate an agency determination because of doubts as to its wisdom or because the record may support more than one result." In re N.J. Pinelands Comm'n Resolution PC4-00-89, 356 N.J. Super. 363, 372 (App. Div. 2003). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980).

T.G. argues the Division's substantiation of Olive's sexual abuse allegations is not supported by substantial credible evidence and that the Division erred by relying on Olive's statements to the Division, to her parents

and during the forensic interview because they are not corroborated by competent material evidence. He further argues the Division erred by rejecting his testimony denying the allegations as not credible, and accepting Ferrer's opinions and rejecting those offered by Dr. Singer.

A substantiated finding of sexual abuse is required where a preponderance of the evidence establishes that an individual who qualifies as a "[p]arent or guardian" within the meaning of N.J.S.A. 9:6-8.21(a) "commits or allows to be committed an act of sexual abuse against [a] child" under the age of eighteen. N.J.S.A. 9:6-8.21(c)(3). A substantiated finding of sexual abuse must be founded on "competent, material and relevant evidence." N.J.S.A. 9:6-8.46(b).

Here, the ALJ found Olive's statements to her parents, the Division and during her forensic interview were credible and, in part, relied on those statements to support the determination that the Division established by a preponderance of the evidence that T.G. committed sexual abuse against Olive. The ALJ further found T.G.'s testimony denying the allegations to be not credible. The ALJ credited Olive's consistent repetition of the essential details of the sexual abuse, the absence of any motive for her reporting the abuse and the fact that she had too much to lose—her friendship with Josephine—and nothing to gain by making the report, in her reasoned assessment of Olive's

credibility. The ALJ, who observed T.G. testify, found he was "highly motivated to deny the charges against him" and that his denials were not credible based on his "testimony and demeanor." We accord substantial deference to the credibility determinations of the trial judge, N.J. Div. of Child Prot. and Perm. v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017), and T.G. offers no basis to depart from that deference here.

We reject T.G.'s claim the ALJ and Division could not properly rely on Olive's statements because she did not testify at the hearing and her out-of-court statements were not corroborated as required under N.J.S.A. 9:6-8.46(a)(4). The statute provides that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). The statute "constitutes a statutorily created exception to the hearsay rule but independent evidence of corroboration is required in order to find abuse or neglect." N.B., 452 N.J. Super. at 522.

"The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 157 (App. Div.

2018) (quoting N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003)). But that list is not exhaustive. "A child's statement need only be corroborated by '[s]ome direct or circumstantial evidence beyond the child's statement itself.'" Ibid. (alteration in original) (quoting N.B., 452 N.J. Super. at 522). Corroborative evidence must "'only provide support' for the child's statements," ibid. (quoting N.B., 452 N.J. Super. at 521), and need not be "'offender-specific,' because ' [i]t would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator," ibid. (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 435 (App. Div. 2002)).

Corroborative evidence may be circumstantial, but it "must be independently admissible for a court to deem it corroborative of a child's statement." Ibid. The consistency of the child's statements is distinct from and will not on its own constitute corroboration, but consistency may be considered. Ibid.

We conclude the Division satisfied its burden of presenting some evidence corroborating Olive's statements concerning T.G.'s sexual abuse and, as a result, the ALJ and Division could properly rely on Olive's out of court statements to

support their fact findings. See N.J.S.A. 9:6-8.46(a)(4). As the ALJ found, Olive's statements were corroborated by her father's testimony concerning the changes in her behavior, including her unwillingness to go to T.G.'s home "as she had previously done, to be with and sleep overnight with her best friend," Josephine; her proffer of false excuses for her refusal to go to T.G.'s home[2]; the changes in the way she dressed—wearing shorts under dresses—; and her crying at the possibility of seeing T.G. during her arrival at a summer camp. Moreover, T.G.'s expert, Dr. Singer, testified Olive's behavior was consistent with a child who has been the victim of sexual abuse. See Z.P.R., 351 N.J. Super. at 436 (noting that "age-inappropriate behavior is one of the behavioral signs associated with child sexual abuse"); cf. N.B., 452 N.J. Super. at 522 (finding in part that a child's prior statements were not corroborated because "the child's behavior did not sufficiently corroborate emotional harm").

T.G. contends Olive's behavior does not corroborate her out-of-court statements as required under N.J.S.A. 9:6-8.46(a)(4) because there are alternative explanations for the behavior. For example, he claims her behavior

---

[2] As explained by Matt during his testimony, Olive said she did not want to go to T.G.'s home as she had frequently and routinely done in the past because T.G. and his wife argued a lot, but T.G. testified that he and his wife did not argue a lot and they never argued while Olive or any of Josephine's other friends were present.

may have been the product of Carl's transition from female to male, and because Olive was a preteen or suffered from social issues. The record, however, is devoid of any evidence that Carl's transition caused Olive to make a report against T.G., and the evidence shows she was supportive of the transition and that Carl was not present during the vacation when Olive reported T.G.'s action. Similarly, there is no evidence Olive's status as a preteen or any putative but unidentified social issues caused her to assert that T.G. sexually abused her. In any event, the theoretical possibility that Olive's behavior may be an indicia of something other than sexual abuse does not require rejection of the ALJ's reliance on Olive's out-of-court statements. It is enough that her behavior, as detailed in her father's admissible testimony, "provide[s] support for the out-of-court statements." L.A., 357 N.J. Super. at 166 (quoting Z.P.R., 351 N.J. Super. at 436).

Our conclusion the court properly considered Olive's out-of-court statements does not, however, alone permit the affirmance of the Division's order. The ALJ might have, but did not, base her finding that T.G. sexually abused Olive exclusively on Olive's out-of-court statements. The ALJ considered other evidence she found credible in determining that T.G. engaged in the sexually abusive actions that supported the substantiated finding T.G.

sexually abused Olive. Most importantly, the ALJ found Ferrer's testimony that Olive "experienced sexual abuse . . . to be persuasive" in determining the sexual abuse occurred.

T.G. asserts the ALJ should not have relied on Ferrer's testimony because it constituted an inadmissible net opinion.[3] The net opinion rule is a "corollary of [Rule 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008) (first alteration in original) (citation omitted). Experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Townsend v. Pierre, 221 N.J. 36, 55 (2015) (citation omitted).

"[A] trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011). "A standard which is personal to the expert is equivalent

---

[3] T.G. moved to bar Ferrer's testimony before she testified. Following her testimony, T.G. moved for her testimony to be stricken, in part because it constituted a net opinion. The ALJ denied both requests.

A-3196-17T4

to a net opinion." Ibid. (quoting Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999)).

Ferrer's opinion that Olive was the victim of sexual abuse constituted an inadmissible net opinion. Ferrer testified that the self-report checklists and tests she administered to Olive and her mother did not yield any symptomatology of sexual abuse. When asked for the basis for her "diagnostic impression" that Olive was sexually abused, Ferrer stated her opinion was "[b]ased on the consistency of [Olive's] report throughout the investigation, as well as [Olive's] mom's account, and as well as the information that was provided by the Division investigator and the Division's records." She also testified her opinion was based on "conversation," "consistency" and "lack of motive."

Ferrer's opinion is otherwise unsupported by reference to any standard establishing the reliability of her methodology, if any, for arriving at her opinion. See Townsend, 221 N.J. at 54 (citation omitted). Ferrer was neither asked for nor identified any standard upon which her opinion was based. An expert's conclusion should be "excluded if it is based merely on unfounded speculation and unquantified possibilities," Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 300 (App. Div. 1990), but that is what Ferrer offered here. Lacking any reference to a standard for her conclusions, Ferrer

offered nothing more than a statement of personal opinion; in other words, an inadmissible net opinion.

The administrative rules provide an ALJ with latitude in admitting evidence, but an expert's opinion must be "[w]ithin the scope of the special knowledge, skill, experience or training possessed by the witness." N.J.A.C. 1:1-15.9(b)(2). Ferrer did not point to any special knowledge, skill, experience or training providing the standard upon which her conclusory net opinion was based. The ALJ erred by admitting Ferrer's opinion testimony and by relying upon it to support her conclusion T.G. committed sexual abuse on Olive. See, e.g., Riley v. Keenan, 406 N.J. Super. 281, 295-96 (App. Div. 2009) (finding an inadmissible net opinion where an expert did not reference any objective or toxicological studies or publications supporting the expert's opinion).

We are constrained to reverse and remand for a new trial because it is clear the ALJ and Division relied on Ferrer's opinion, which the ALJ found persuasive, in weighing the evidence and assessing the credibility of the witnesses, including Olive. It was error for the ALJ and the Division to do so because Ferrer's net opinion did not constitute competent evidence that Olive was subject to sexual abuse. We do not offer an opinion on the adequacy of the

19

competent evidence otherwise presented,[4] including Olive's out-of-court statements, because "[t]o do so would arrogate to us the role of the [ALJ] as fact-finder." Z.P.R., 351 N.J. Super. at 436-37. On remand, it will "be up to the [ALJ and Division] to weigh all of the evidence, make determinations as to credibility and weight of that evidence, and come to a final determination as to whether the allegation of [sexual] abuse has been proven by a preponderance of the evidence." Id. at 437. The matter shall be assigned to a different ALJ on remand because the ALJ who conducted the hearing has already made credibility determinations.

Because we conclude that a remand is required due to the court's reliance on Ferrer's net opinion, it is unnecessary to address T.G.'s remaining arguments that the ALJ and Division erred in their assessment of the credibility of the witnesses, including Ferrer and Dr. Singer.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We also do not offer an opinion concerning the admissibility of any of the other testimony or evidence presented because there is no challenge to the admissibility of other testimony or evidence on appeal. Nothing in this opinion bars the parties from objecting to testimony or evidence on remand, and the ALJ shall address such objections based on the record before it.

A-3196-17T4