**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2274-18T2

AFRIDITA ABAS and
ZIKO ABAS,

     Plaintiffs-Appellants,

v.

ARIMINAS BAGELS, LLC,
d/b/a BAGEL HUT, JOANN P.
MONTERO, AIA, and
WINTERS DESIGN, LLC,

     Defendants,

and

EVANS ARCHITECTS, AIA, JOHN
EVANS, and MATTHEW EVANS,

     Defendants-Respondents.

_____

     Argued January 23, 2020 – Decided April 29, 2020

     Before Judges Koblitz, Whipple and Gooden Brown.

     On appeal from the Superior Court of New Jersey, Law
     Division, Monmouth County, Docket No. L-3454-15.

Richard D. Picini argued the cause for appellants (Caruso Smith Picini, PC, attorneys; Richard D. Picini, of counsel and on the briefs).

Lawrence P. Powers argued the cause for respondents (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Lawrence P. Powers, of counsel and on the brief; Peter K. Oliver, on the brief).

PER CURIAM

Plaintiffs Afridita and Ziko Abas appeal from the trial court's January 2, 2019 orders granting summary judgment to defendants Evans Architects, AIA, John Evans and Matthew Evans (the Evans defendants) and denying plaintiffs' cross-motion for summary judgment. After reviewing the record in light of the contentions advanced on appeal, we affirm.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiffs, who opposed the entry of summary judgment. Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

On September 16, 2013, plaintiff[1] Afridita Abas was working at the Bagel Hut, in Aberdeen, where she slipped on a wet floor, on her way back to the kitchen area of the store, causing her left arm to land in a bagel kettle filled with

---

[1] Plaintiff's husband Ziko asserts a per quod claim.

hot water. She suffered first-degree burns to the left side of her face, neck and chest, and second-degree burns to her left flank, forearm, and armpit, as well as visible scarring.

The Evans defendants designed the original architectural plans for Bagel Hut in 2006. The 2006 design located the bagel kettle near a corridor used by employees to traverse from the front counter area of the store to the back-kitchen area. The 2006 design showed the kettle was shielded and separated from the corridor by two walls. In a 2007 revision to the original design, the Evans defendants changed the location of the kettle by placing it along the corridor and removing the two protective walls which shielded the kettle from passing employees. The 2007 design shows a partition wall extending from the rear kitchen wall towards the kettle, perpendicular to the kettle.

In 2012, defendants Winters Design, LLC, and JoAnn P. Montero, the architect of record, designed architectural plans for Bagel Hut's renovation and expansion. The partition wall extending towards the kettle was demolished as part of the renovation, so at the time of plaintiff's accident, the kettle did not have any wall shielding it.

On September 15, 2015, plaintiff filed a complaint against multiple entities including the Evans defendants, JoAnn Montero and Winters. Plaintiff

A-2274-18T2

alleged defendants breached their professional duty of care in negligently designing the layout of Bagel Hut regarding the placement, design, and installation of the bagel kettle.

Plaintiffs' expert William Martin, a licensed professional architect with a background in designing commercial kitchens, visited Bagel Hut in April 2017, to review the premises and observe the site of Afridita's accident. Martin also reviewed multiple layout and construction plans including the 2006 plan, 2007 plan, and the 2012 plan provided to the Aberdeen building department. Martin compiled his observations in a report dated June 28, 2017.

In his report, Martin noted that in the 2006 plan "the bagel kettle [was] located adjacent to the bagel oven and [was] shielded by [two] walls . . . . [T]he layout designer's decision to place the kettle in a location protected by walls acknowledges the proper and safe functioning of this kitchen." In the 2007 plan "[t]he bagel kettle [and oven] [was] now along the travel path for employees to reach the back[-]kitchen work area." Martin noted that in the 2007 plan the kettle "[was] shielded by a single wall . . . [and the] designer's decision to place the kettle . . . along a travel path . . . is potentially a safety issue, however the single wall . . . provide[s] some protection for employees    . . . ." In the 2012 plan, Martin found the "walls around the bagel kettle have been removed . . . .

This is potentially a safety issue for this kitchen design layout. The layout designer's decision to remove all walls from around the kettle removes any protective shielding preventing accidental contact with the bagel kettle."

Martin's report listed four central observations which, in his professional opinion, compromised the safety of the Bagel Hut facility:

> 1. Plan layout issues.
>
> 2. Bagel kettle equipment located with insufficient clearances and protections for persons.
>
> 3. Floor finish materials that contribute to potential slip hazards for persons.
>
> 4. Lighting levels that are insufficient for employees to perform their duties in a safe manner.

In his expert report and deposition testimony, Martin asserted that in designing the layout of Bagel Hut with these safety hazards, defendants breached their duty to "recognize the primary obligation to protect the health, safety, and welfare of the public in [their] performance of professional duties, and . . . act with reasonable care and competence."

The Evans defendants moved for summary judgment arguing, among other things, Martin's conclusions constituted impermissible net opinions, and thus, plaintiffs' claims against them should be dismissed with prejudice.

A-2274-18T2

Defendants Joan P. Montero and Winters Design also moved for summary judgment.

Subsequently, the Evans defendants filed another motion for summary judgment arguing that there is no causal connection between their alleged negligence and Afridita's injuries. Plaintiffs opposed the motions and filed a cross-motion for summary judgment on the issue of superseding cause.

Oral argument on all motions for summary judgment were heard in November 2018. At that time, plaintiffs withdrew their opposition to defendants Montero and Winters Design motions for summary judgment and conceded that the Evans defendants did not breach their duty of care in designing the 2006 plan, since the plan depicted the kettle being shielded by two walls. Instead, plaintiff contended the professional negligence claim is tied to the 2007 plan which changed the location of the kettle to an area along a travel path without a wall providing enough protection for employees passing by the kettle.

The court granted summary judgment and issued a written decision finding the Evans defendants were entitled to summary judgment as a matter of law because Martin's opinions addressed no specific custom, practice, or standard with which defendants had not complied. The judge concluded defendants violated no professional duty of care, and therefore, Martin's report

6

was a net opinion. The court issued an order granting the Evans defendants' motion for summary judgment and denying plaintiffs' cross-motion for summary judgment.

This appeal followed.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014) (citations omitted). Thus, we consider, as the motion judge did, "'whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id. at 406 (citation omitted). If there is no genuine issue of material fact, we must then "'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted).

On appeal, plaintiffs argue the trial judge erred in rejecting Martin's report as a net opinion and granting summary judgment in favor of the Evans defendants. Plaintiffs also contend the court erred in failing to grant their cross-motion for summary judgment. Since a trial court, when "'confronted with an evidence determination precedent to ruling on a summary judgment motion . . .

must address the evidence decision first,'" we review the trial court's decision in that sequence.  Townsend v. Pierre, 221 N.J. 36, 53 (2015).

Plaintiffs argue the trial court erred finding Martin did not identify an industry standard the Evans defendants violated when they placed the bagel kettle next to a pathway employees used to access the back-kitchen. Martin's opinion relied on the standard set forth in N.J.A.C. 13:27-5.1(a):

> An architect shall at all times recognize the primary obligation to protect the health, safety and welfare of the public in the performance of professional duties, shall act with reasonable care and competence, and shall apply the technical knowledge and skill which are ordinarily applied by architects of good standing, practicing in the same locality.

Plaintiffs argue that Martin's reliance on N.J.A.C. 13:27-5.1(a) does not establish the duty of care, but addresses the overall competence of the 2007 plan, which moved the bagel kettle from its shielded position leaving it adjacent to a pathway to the kitchen, deviating from an accepted architectural duty of care and creating an unnecessary hazard for employees.  Plaintiff asserts Martin is highly qualified as he is a licensed architect who designed at least sixteen commercial kitchens and was informed by the recommended kitchen layout published by a bagel kettle manufacturer and the Evans defendants 2006 plan.

Plaintiff also asserts that while N.J.A.C. 13:27-5.1(b) requires compliance with all applicable statutes, regulations, and building codes, and the code prohibits the knowing violation of the same, there is nothing in the code which limits an architect's obligations to mere compliance with the applicable statutes, regulations and building codes. Plaintiff further asserts that an experienced architect should not be precluded from offering an opinion on a deviation from the accepted architectural practice because the complained of conduct did not violate a building code.

"'[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages.'" Davis, 219 N.J. at 406 (citation omitted). In most negligence cases, plaintiffs need not prove the standard of conduct violated by the defendant because it "is sufficient for [a] plaintiff to show what the defendant did and what the circumstances were," Sanzari v. Rosenfield, 34 N.J. 128, 134 (1961), and these cases include facts where "'a lay person's common knowledge is sufficient to permit a jury to find that the duty of care [had] been breached . . . .'" Davis, 219 N.J. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

In professional negligence cases, however, the standard of care must normally be established by expert testimony, because a jury should not be permitted to speculate, without an expert's guidance, on issues where lay persons have insufficient knowledge or experience.  See Rosenberg v. Cahill, 99 N.J. 318, 325 (1985); see also Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. 1997) (finding juries should not be permitted to speculate, without expert testimony, in areas where lay persons are not expected to have sufficient knowledge.).  In these cases, a "plaintiff must produce expert testimony upon which the jury could find that the consensus of the particular profession involved[,] recognized the existence of the standard defined by the expert."  Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999).

Since a jury may give substantial weight to an expert's testimony, "expert[s] may not provide an opinion at trial that constitutes [a] 'mere net opinion.'"  See Davis, 291 N.J. at 410 (citation omitted); see also Townsend 221 N.J. at 55.  The net opinion rule renders an expert's report inadmissible if the expert's conclusions "lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified."  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) (citation omitted).  If an expert cannot offer objective support for his or her opinions, but

offers only a standard that is "personal," the opinion is a mere net opinion. Ibid.

Experts cannot provide conclusions based solely on "'unfounded speculation,'"

Townsend, 221 N.J. at 55 (citation omitted), but instead, must bring forth the

"why and wherefore" of their expert opinion to be admissible, Pomerantz, 207

N.J. at 372 (citation omitted).

A regulatory code or standard can be "evidence of due care but is not

conclusive on the subject." Black v. Public Serv. Elec. & Gas Co., 56 N.J. 63,

77 (1970). In Davis, 219 N.J. at 401, the Court found that plaintiffs, whose

children were killed in a hotel fire, did not establish the necessary requirements

of their negligence claim because their expert's report was an inadmissible net

opinion. There, plaintiffs sued the defendant fire inspectors for negligently

failing to inform the hotel manager of the need to install a sprinkler in a storage

closet. Id. at 402. Plaintiff's expert asserted in both his report and deposition

that a reasonable sprinkler inspector would have informed the owner of the hotel

about the need for an additional sprinkler in the closet. Id. at 410. While the

Court noted that plaintiff's expert referenced several National Fire Protection

Association standards in his report and provided a brief discussion of a few fatal

fires that may have been fueled by the storage of combustible materials in

stairwells, the Court found none of the sources lent support to the expert's

11

conclusions regarding the actions a reasonable inspector would have taken. Id. at 411-13. Because plaintiff's expert provided no reference to any written document, or even unwritten custom or practice, his personal view was an inadmissible net opinion. Id. at 413-14; see Taylor, 319 N.J. Super. at 184 (holding plaintiff's expert rendered a net opinion because he presented no authority to support his opinion that an architect had a duty to make a site inspection for small sites.).

Here, Martin's opinion did not support the conclusion that the Evans defendants breached their professional standard of care in the 2007 plan. Martin made no reference to a written document, or an unwritten custom or practice, and did not buttress his opinion with any applicable regulations, codes or customs that illustrate that the Evans defendants breached their standard of care in designing the 2007 plan.

Martin asserted the Evans defendants did not meet the standard of care required under N.J.A.C. 13:27-5.1(a) because the 2007 decision to place the bagel kettle along the travel path created a potentially dangerous condition for employees. However, he provided no authority to support the conclusion that the design plan fell below the level of competence required by the general safety statute, N.J.A.C. 13:27-5.1. Martin found no specific code violation and

conceded he found no federal, state, county, or municipal statutes, regulations or ordinances regarding the spacing around a bagel kettle. Instead, Martin premised his opinions on his experience as an architect and his background in designing commercial kitchens, the Evans defendants 2006 plan, and the recommended kitchen layout published by a bagel kettle manufacturer. The lack of a specific code violation is not dispositive of the issue of whether the Evans defendants complied with the applicable standard of care, but Martin provided insufficient reasons to demonstrate his conclusions were not based on his personal view of N.J.A.C. 13:27-5.1.

Martin provided no violations of generally accepted standards, practices or customs, to illustrate that the deviation from the 2006 plan design fell below standards of care. Martin's reliance on the recommended kitchen layout published by a bagel kettle manufacturer is not supported by evidence that it is an industry standard rather than a suggestion by a manufacturer.

Thus, we discern no error in the court's determination to grant summary judgment because plaintiffs' expert's opinions are barred as net opinions. Since plaintiff has failed to satisfy the elements of their negligence claims, we need not reach plaintiffs' additional arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2274-18T2