**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3791-18T3

GARY YERMAN and MEGAN
SMOLLIK, husband and wife,

     Plaintiffs-Appellants,

v.

JAMES A. MORRIS, ESQ. and
JAMES A. MORRIS, PC,

     Defendants-Respondents,

and

CHARLES PONTILLO, CRIS
STEPH, LTD., ATILLIO ADAMO,
PRUDENTIAL ADAMO REALTY,
CAROLINE SAPUNARICH,
BETTER HOMES REALTY,
CONSTANTINE STAMOS, ESQ.,
FERRARO & STAMOS, LLP,

     Defendants.

_____

Argued September 15, 2020 – Decided   October 27, 2020

Before Judges Fisher, Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5380-16.

Kenneth S. Thyne argued the cause for appellants (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, on the briefs).

Ernest J. Bernabei III argued the cause for respondents (Pillinger Miller Tarallo, LLP, attorneys; Patrick J. Cosgrove, on the brief).

PER CURIAM

In this legal-malpractice case plaintiffs Gary Yerman and Megan Smollik appeal the trial judge's denial of their motions to bar the testimony of the liability expert of defendants James A. Morris, Esq. and James A. Morris, P.C.[1] and their motion for a new trial. We find that the trial judge acted within her discretion in denying those motions and affirm.

Plaintiffs, who are married to each other and are both lawyers, decided to purchase a vacant lot to build a 5000 square-foot, one-story house. After Yerman executed the contract of sale and during the attorney-review period, Yerman asked Morris to represent him in the purchase of the property.[2] At trial,

---

[1] Plaintiffs named other defendants, but only these two defendants participated in the trial. In referencing "defendants," we mean these two defendants.

[2] Plaintiffs contended that Morris represented both of them. The jury found that Morris represented only Yerman.

A-3791-18T3

Yerman and Morris gave differing testimony as to the scope of defendants' representation. Yerman testified that the scope of the representation was not limited; Morris testified that defendants were retained to review the contract of sale, to make sure that the contract had a broad due-diligence clause, to order title searches, and to ensure that Yerman would have clear title to the property. Although he testified that Morris had told him repeatedly to "do your due diligence," Yerman denied that he had agreed to perform his own due diligence and stated that he did not understand the meaning of the term due diligence; Morris stated that Yerman had asked specifically to do his own due diligence and repeatedly confirmed that he would perform his own due diligence.

Morris advised the seller's attorney that Yerman had rejected the contract of sale and was seeking a written representation from the seller that the property was not a designated wetlands property and an expanded due-diligence clause that would enable Yerman to cancel the contract if he was not satisfied with the inspections of the property. After some additional negotiations, Yerman and the seller agreed to a final form of the contract.

In a subsequent email, Morris asked Yerman: "Are you completely satisfied you can build your home on the [p]roperty? Please advise." Yerman told Morris he wanted to extend the due-diligence period. Morris obtained the

3

seller's consent to an extension and advised Yerman of that consent in an email. In that email, Morris asked Yerman to "[m]ake sure you call me before April 27[th] if there are any due diligence issues that are not resolved" and included an email chain between the seller's representative and the seller's counsel regarding the purchase of engineering studies about the property that had been prepared for the seller. Those emails referenced various studies and surveys, vegetative species data sheets, and qualifications of wetlands professionals. At trial, Yerman confirmed that he had received the email chain, but denied that he had read it. Yerman in an email told Morris that he had been discussing directly with the seller's representative the acquisition of environmental test results. The seller's representative met with Yerman and gave him a manilla envelope containing documents regarding the property, including a survey that revealed the existence of wetlands and a wetlands buffer on the property. Yerman testified that he had not reviewed the contents of the envelope. Yerman also denied knowing what wetlands are and stated that he had misspoken when he testified during his deposition that before the closing he was aware that the property contained wetlands. According to plaintiffs' liability expert, Yerman "had reason to inquire that there was a potential for wetlands on the property." When asked if Yerman was aware before closing that there was a wetlands issue,

plaintiffs' expert answered that "he was aware – I believe he was or should have been aware."

Morris ordered a survey of the property. The survey showed the presence of skunk cabbage on the property. Skunk cabbage can be an indication of wetlands. Morris did not advise plaintiffs of the skunk-cabbage reference in the survey and did not provide them with a copy of the survey. The survey did not indicate the size of the wetlands buffer zone or the existence of the riparian buffer zone.

After the closing, plaintiffs retained an architect and an engineer. Plaintiffs' engineer advised their architect that plaintiffs could not build the house they had hoped to build because the property was restricted by a 300-foot riparian buffer zone that was related to a stream at the back of the property. The property also contained a fifty-foot wetlands buffer zone. Plaintiffs ultimately were able to build on the property an 8500-square-foot, two-story house.

In their complaint, plaintiffs asserted that the sellers had failed to disclose to them "the existence of significant development restrictions on the [p]roperty arising from regulated wetlands and riparian buffers." Plaintiffs faulted their lawyer for not acting "with the appropriate diligence" in investigating the existence of development restrictions on the property, for failing to "make or

advise" them that an investigation of the property should take place before closing, and for failing to provide them with necessary advice to protect their rights and to make sure they were fully informed about the property before the closing.

A week before the trial, plaintiffs filed a motion in limine to bar the testimony of defendants' liability expert witness, Robert L. Grundlock, Jr., Esq. Judge Christine A. Farrington conducted oral argument on the first day of the trial. During argument, plaintiffs' counsel conceded that Grundlock's resume was "fairly impressive," but challenged his qualifications because he had not handled a real-estate closing in decades. He contended that Grundlock's opinion was an inadmissible net opinion, faulting Grundlock for not citing to particular cases or treatises in his written opinion. The next day, the trial judge issued an order, denying in part and granting in part plaintiffs' motion. She held that "[t]o the extent Mr. Grundlock opines on facts and invades the province of the jury those parts of the report are barred. Generally his report p. 19 through 23 is admissible. Plaintiffs' argument goes to weight not admissibility."

Before Grundlock testified, the trial judge conducted a Rule 104 hearing outside the presence of the jury. During that hearing, Grundlock stated that although he had not personally handled a real-estate transaction recently, he had

6

reviewed approximately 1000 real-estate transactions, including attorney closing files, in his capacity over the last twenty years as a primary New Jersey attorney for a title company. Plaintiffs' counsel argued that Grundlock was not qualified to act as an expert because he had not personally handled a real-estate transaction recently and again requested that his testimony be barred. The trial judge again denied that request, finding that Grundlock's title insurance work gave him sufficient training and experience to render an opinion in this case and that plaintiffs' arguments went to the weight of his testimony, not its admissibility. She also noted that although the Legislature required that experts in medical-malpractice cases have the same specialty as the defendant doctor, that requirement was not imposed in legal-malpractice cases.

After the jury rendered a defense verdict, plaintiffs filed a motion for a new trial pursuant to Rule 4:49-1, asserting that the verdict was a miscarriage of justice. They argued that an undisputed fact before the jury – Morris had not told plaintiffs about the skunk cabbage – established a deviation from the standard of care. In opposition to that motion, defendants argued that plaintiffs' reliance on the skunk-cabbage issue was misplaced because the restrictions to plaintiffs' proposed building were not based on potential wetlands, but an actual

riparian border – a visible stream at the back of the property. They also contended that the verdict was supported by the evidence.

In a detailed and well-reasoned opinion in which she carefully reviewed the testimony of each witness, Judge Farrington denied plaintiffs' motion for a new trial. She found that plaintiffs had failed to demonstrate clearly and convincingly that the verdict was a miscarriage of justice, considering both the "proofs as shown by the record" and "appropriate matters of credibility." Dolson v. Anastasia, 55 N.J. 2, 6-7 (1969). She noted the parties' conflicting testimony about the scope of defendants' representation and found that the jury had "substantial issues of credibility" to determine regarding that and other issues, including: Yerman's concession that he had received the prior owner's construction plans, but his denial of having seen the engineering survey; Yerman's assertion that he did not know what a due-diligence period was or what wetlands were; plaintiffs' inconsistent testimony about the financing for the purchase of the property and construction; Smollik's dismissive testimony about the due-diligence language in the contract and her concession that plaintiffs initially intended to build a 5000-square-foot ranch; and plaintiffs' ultimate construction of an 8500 square-foot, two-story house despite the restrictions.

A-3791-18T3

The judge determined that the jurors could have found plaintiffs' testimony to be incredible. We defer to her credibility assessments. Id. at 7.

Judge Farrington cited plaintiffs' own expert's testimony that Yerman knew or should have known about the reports and had reason to suspect that the property contained wetlands. She compared plaintiffs' expert's opinion that Morris had a duty to advise plaintiffs of the wetlands despite her belief that Yerman had reason to suspect the presence of wetlands, with the testimony of defendants' expert, who opined that defendant had met his duty by advising Yerman of the need to do due diligence and directing him to the prior owner who had due-diligence material. The judge found that the jury had before it sufficient evidence to return a defense verdict.

A trial court's decision admitting expert testimony is entitled to our deference and is reviewed under an abuse-of-discretion standard. Townsend v. Pierre, 221 N.J. 36, 52-53 (2015). An abuse of discretion occurs when a trial judge's decision "was not premised upon consideration of all relevant facts, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005); see also State v. S.N., 231 N.J. 497, 515 (2018). We find no abuse

of discretion in Judge Farrington's decisions denying plaintiffs' applications to bar Grundlock's testimony.

Plaintiffs assert that the judge should have precluded Grundlock from testifying because his opinion was an inadmissible net opinion. An expert opinion must be based on "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008); see also N.J.R.E. 703. An expert's bare opinion that has no support in factual evidence or similar data is a net opinion, which is not admissible and may not be considered. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011).

The net-opinion rule does not impose a "standard of perfection." Townsend, 221 N.J. at 54. Rather, it "is a prohibition against speculative testimony." Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997). A judge should not admit expert testimony "if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 299 (App. Div. 1990).

However, an expert's testimony should not be excluded simply "because it fails to account for some particular condition or fact which the adversary considers relevant." State v. Freeman, 223 N.J. Super. 92, 116 (App. Div. 1988). The net-opinion rule does not "mandate that an expert organize or support an opinion in a particular manner that opposing counsel deems preferable." Townsend, 221 N.J. at 54. That an expert declines "to give weight to a factor thought important by an adverse party does not reduce [the expert's] testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion." Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002). Instead, the purported deficiencies in the expert's opinion may be "a proper 'subject of exploration and cross-examination at trial.'" Ibid. (quoting Rubanick v. Witco Chem. Corp., 242 N.J. Super. 36, 55 (App. Div. 1990), modified on other grounds, 125 N.J. 421 (1991)).

And that is exactly what happened here. Plaintiffs fault Grundlock for not citing a treatise and a case they think he should have cited, Conklin v. Hannoch Weisman, 145 N.J. 395 (1996), but they recognize that he had cited St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571 (1982). That seminal case set the standard that "an attorney is obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary

11

ability and skill possess and exercise" and also that "[w]hat constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform." Id. at 588; see also Ziegelheim v. Apollo, 128 N.J. 250, 260 (1992) (noting that our Supreme Court has used broad language regarding attorneys' duties because attorneys' duties in specific cases vary with circumstances). In relying on St. Pius, Grundlock based his opinion on a standard set by our Supreme Court and not merely on his personally-held views. Cf. Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001). He gave the "why and wherefore" of his opinion, Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996), reflecting defendants' view that their duty was bounded by the circumstances of this case, including the limited scope of representation. The jury was free to accept or reject that view based on the presentation of all evidence at trial and their assessment of the witnesses' credibility. Judge Farrington properly excluded any opinions on facts that invaded the province of the jury and otherwise allowed Grundlock to testify. We agree with Judge Farrington's conclusion that plaintiffs' argument went to the weight to be given to Grundlock's opinion and not its admissibility and affirm her decision that it was not a net opinion.

Plaintiffs also assert that the judge should have precluded Grundlock from testifying because he lacked the requisite qualifications to serve as an expert witness in this case. Pursuant to N.J.R.E. 702, an expert witness "must have sufficient expertise to offer the intended testimony." Creanga v. Jardal, 185 N.J. 345, 355 (2005); see also Townsend, 221 N.J. at 53. The requirements of N.J.R.E. 702 "are construed liberally in light of Rule 702's tilt in favor of the admissibility of expert testimony," State v. Jenewicz, 193 N.J. 440, 454 (2008).

A trial judge has discretion in determining the sufficiency of an expert's qualifications. State v. Torres, 183 N.J. 554, 572 (2005). When the qualifications of an expert are at issue, N.J.R.E. 104(a) provides that "that issue is to be determined by the judge . . . [who] may hear and determine such matters out of the presence or hearing of the jury." Kemp v. State, 174 N.J. 412, 427 (2002).

Again, that is what properly occurred here. Judge Farrington conducted a Rule 104 hearing. She thereby gave plaintiffs' counsel an opportunity to question Grundlock regarding his experience outside the presence of the jury. She concluded after that hearing that Grundlock could testify before the jury. Plaintiffs' counsel chose not to conduct a voir dire before the jury regarding Grundlock's qualifications and did not object when the trial judge accepted him

13

as an expert in real-estate law, real-estate transactions, and the related duty of care. During cross-examination, plaintiffs' counsel elicited testimony from Grundlock regarding his limited direct handling of real-estate transactions. See James v. City of E. Orange, 246 N.J. Super. 554, 563 (App. Div. 1991) (finding that "[a]ny deficiencies in [an expert's] qualifications should have been left to the consideration of a jury to determine the credibility, weight and probative value of the expert's testimony.").

We see no abuse of discretion in Judge Farrington's conclusion that Grundlock, given his twenty-year representation of a title insurance company and his review of approximately 1000 real-estate transactions, had sufficient training and experience to serve as an expert witness in this case and that plaintiffs' concerns went to the weight given to his testimony and not its admissibility. Grundlock's experience may not have mirrored Morris's experience, but, as Judge Farrington correctly recognized, that overlap in specialty, although required in medical-malpractice cases, is not required in legal-malpractice cases. Cf. Nicholas v. Mynster, 213 N.J. 463, 468 (2013) (finding that N.J.S.A. 2A:53A-41 requires medical-malpractice expert to have same specialty as defendant doctor).

We note our concern regarding the timing of plaintiffs' applications to bar Grundlock from testifying. His report is dated August 31, 2018. Plaintiffs filed their motion in limine to bar his testimony on January 28, 2019, one week before the trial was scheduled to begin. A motion in limine cannot be "a summary judgment motion that happens to be filed on the eve of trial." Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 471 (App. Div. 2015). We have held that motions in limine are disfavored; our caution to trial courts that they be granted "only sparingly," Bellardini v. Krikorian, 222 N.J. Super. 457, 464 (App. Div. 1988), is especially applicable "when the 'motion in limine' seeks the exclusion of an expert's testimony, an objective that has the concomitant effect of rendering a [party's] claim futile," Cho, 443 N.J. Super. at 470-71. Had the trial judge granted plaintiffs' motion in limine, thereby barring defendants' liability expert, it would have had a dispositive effect on defendants' case. That dispositive effect one week before trial rendered plaintiffs' "motion in limine" procedurally improper. Id. at 470 (finding that "as a general rule, a motion in limine will not have a dispositive impact on a litigant's entire case" and that motion in limine with dispositive effect is governed by summary-judgment rules).

A jury's verdict "is entitled to considerable deference." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011). We also give "considerable deference" to a trial judge's decision on a motion for a new trial because "the trial court has gained a 'feel of the case' through the long days of the trial." Lanzet v. Greenberg, 126 N.J. 168, 175 (1991). We may overturn a jury verdict if it "is so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice, or partiality." Wytupeck v. Camden, 25 N.J. 450, 466 (1957); see also Maison v. NJ Transit Corp., 460 N.J. Super 222, 234 (App. Div. 2019).

Plaintiffs have not met that high standard. Plaintiffs contend that the jury's verdict should be overturned because it was against the weight of the credible evidence. In her thorough opinion denying plaintiffs' motion for a new trial, Judge Farrington carefully reviewed the evidence presented and gave "due regard" to the jury's credibility assessments. See Risko, 206 N.J. at 521. We discern no reversable error in her decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3791-18T3