**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0867-23

CINDY BOLGER
KASHIWAKURA,

     Plaintiff-Appellant,

v.

THE BEASLEY FIRM, LLC,
and LANE R. JUBB JR., ESQ.,

     Defendants-Respondents,

and

ARTHUR SCHWARTZ, ESQ.,

     Defendant.

_____

Argued November 6, 2024 – Decided January 30, 2025

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket Number L-1869-20.

Sanford F. Young argued the cause for appellant.

John L. Slimm argued the cause for respondent (Marshall Dennehey, PC, attorneys; John L. Slimm, on the brief).

PER CURIAM

Plaintiff Cindy Bolger Kashiwakura appeals from an order granting summary judgment to defendants, The Beasley Firm, LLC and Lane R. Jubb, Jr., Esq. dismissing her claims for legal malpractice with prejudice and denying her cross-motion for partial summary judgment as to liability. Plaintiff also appeals from orders: 1) striking the report and opinion of her legal malpractice expert; 2) denying her reconsideration motion of that order; 3) denying her motion to reopen discovery to permit production of an amended expert report and 4) denying her motion to strike the opinion of defendants' legal malpractice expert.

Because we determine the trial court order striking the report and opinion of plaintiff's legal malpractice expert and barring his trial testimony and the court's subsequent order denying reconsideration were misapplications of the trial court's discretion, we reverse. In addition, because the order striking plaintiff's expert opinion was the basis for granting defendants' motion for summary judgment, we also reverse that order and reinstate her complaint. We vacate the order denying plaintiff's motion for partial summary judgment on

2

liability and remand for the court to decide this motion on its merits.  We affirm, on mootness grounds, the trial court's order denying plaintiff's application for the court to pre-emptively determine the common knowledge doctrine applies to plaintiff's claims.  We further vacate the order denying plaintiff's motion to strike the report and opinion of defendants' legal expert on mootness grounds and remand to the trial court to decide this motion on its merits.  We also affirm the trial court's order denying plaintiff's motion to reopen discovery since this issue is now moot based on this opinion.

I.

The salient facts in this appeal are generally undisputed.  In February 2018, plaintiff retained defendants to prosecute medical malpractice claims against certain medical providers arising from their alleged misdiagnosis of plaintiff with interstitial lung disease (ILD)[1].  Plaintiff claims injuries resulted

---

[1] Interstitial lung disease (ILD) is an umbrella term used for a large group of diseases that cause scarring (fibrosis) of the lungs.  The scarring causes stiffness in the lungs which makes it difficult to breathe and get oxygen to the bloodstream.  Lung damage from ILDs is often irreversible and gets worse over time.  See Interstitial Lung Disease/ American Lung Association at https://www.lung.org/lung-health-diseases/lung-disease-lookup/interstitial-lung-disease.

A-0867-23

from her long-term steroid treatment with prescriptions for prednisone[2], which she took for approximately ten years because of the alleged misdiagnosis.

Plaintiff's underlying medical malpractice complaint, filed in the Law Division, in April 2018, named as defendants, Betsy L. Schloo, M.D., David M. Murphy, M.D., Deborah Heart and Lung Center (Deborah), Alan H. Burghauser, M.D., Pulmonary and Critical Care Associates, LLC and certain fictitious defendants. The complaint asserted Dr. Murphy and Deborah were her medical providers from 1999 to approximately 2010. Dr. Betsy Schloo was a pathologist at Deborah who interpreted some of plaintiff's test results. Dr. Alan Burghauser was one of plaintiff's treating pulmonologists, and Pulmonary & Critical Care Associates was Burghauser's practice entity.

Defendants did not name Dr. Omar Bey as a defendant in the underlying complaint. Dr. Bey treated plaintiff from approximately July 2006 until November 15, 2016. In July 2006, Dr. Bey became plaintiff's principal pulmonologist who treated her for ILD over the next ten years. During these years, he had prescribed Prednisone to treat plaintiff's condition. Defendants

---

[2] Prednisone is a corticosteroid medicine used to decrease inflammation caused by certain medical conditions.

A-0867-23

obtained and filed the required affidavits of merit from appropriately qualified medical providers on behalf of plaintiff pursuant to N.J.S.A. 2A:53-27.

In August 2018, after engaging in limited discovery, defendants filed a motion to withdraw as counsel. Plaintiff opposed the motion through counsel who filed a limited appearance. In December 2018, after hearing oral argument, the judge granted defendants' motion "regardless of fault." The order, which was not entered until February 7, 2019, stated that it was "with consent of [p]laintiff." The judge instructed counsel that plaintiff's new attorney should contact the court to arrange for an immediate case management conference to discuss discovery needs, trial preparation, and trial dates.

After defendants' motion was granted, plaintiff never retained an attorney and failed to retain any experts to substantiate her claims. Subsequently, defendants, Deborah, Dr. Schloo, Dr. Murphy, Dr. Burghauser, and Pulmonary & Critical Care Associates, LLC, moved for summary judgment, which was granted without prejudice by an order dated September 18, 2019. The order also provided that if plaintiff did not move to reinstate her complaint "with the required assurances of the retention of experts by November 1, 2019[,] the dismissal of all [c]laims and [c]ross[-]claims will automatically convert to [d]ismissals with prejudice." Thereafter, plaintiff never attempted to reinstate

5

her complaint and on November 1, 2019 her complaint was dismissed with prejudice pursuant to the September order.

In May 2020, plaintiff filed her legal malpractice complaint against defendants and Arthur Schwartz, Esq. in the Law Division, Hudson County. Thereafter, plaintiff filed an amended complaint to which defendants filed a timely answer. This same month, the claims against Schwartz were dismissed by stipulation.

In November 2021, plaintiff provided defendants with her expert reports. One report was from a legal malpractice expert, Amos Gern, Esq. (Gern), and the other from a medical malpractice expert, Bennett E. Ojserkis, M.D., a pulmonologist. Thereafter, defendants produced the report of their legal expert, John Zen Jackson, Esq. and reports from their medical experts.

On May 22, 2023, defendants filed a motion to strike the report and opinions of Gern and to preclude him from testifying at trial asserting his opinion was an inadmissible net opinion because it failed to provide a standard of care and was further deficient because it failed to provide an opinion on proximate cause or damages. On August 7, 2023, the trial court entered an order granting defendants' motion striking the report and opinions of Gern and precluded him from testifying at trial.

6

On August 14, 2023, defendants moved for summary judgment to dismiss plaintiff's amended complaint, asserting a legal malpractice expert opinion is necessary to sustain her claims. Defendants asserted plaintiff failed to present an expert opinion because her medical malpractice expert opinion had been stricken by the trial court and, without an expert opinion, they are entitled to summary judgment. Plaintiff cross-moved for partial summary judgment as to liability. Also, on August 28, 2023, plaintiff moved for reconsideration of the court's August 7, 2023 order and for leave to submit a revised expert report. On September 6, 2023, plaintiff moved to strike the report and opinion of defendants' legal expert, Jackson, asserting his opinion was a net opinion, and to preclude him from testifying at trial.

On October 10, 2023, defendants' motion for summary judgment was granted, dismissing plaintiff's complaint with prejudice against all defendants. The court denied plaintiff's cross-motion for partial summary judgment as moot. The court also denied plaintiff's motions for reconsideration, for leave to submit a revised expert report and to strike Jackson's report as a net opinion.

## II.

On appeal plaintiff argues: 1) the order striking Gern's expert report as a net opinion was error because his report provided the "why's and wherefores"

and it was not necessary to cite the "applicable rules" related to the standard of care, 2) the court's finding that Gern's report failed to provide an opinion on proximate cause or damages was error and "improperly rejects plaintiff's case within a case methodology" because a jury is entitled to determine these issues; 3) the court's grant of summary judgment to defendants was erroneous because it was based on the improper striking of Gern's expert opinion and, alternatively, an expert opinion was not necessary because plaintiff's claims are subject to the "common knowledge" doctrine; 4) the denial of plaintiff's cross-motion for partial summary judgment as to liability finding the issue was moot was erroneous based on the court's other erroneous determinations; 5) the court's denial of leave to permit plaintiff to submit the revised report from Gern was error because there were exceptional circumstances caused by defendants' unreasonable delay in filing their motion to strike and there was no prejudice to defendants; and 6) the court erred by finding plaintiff's motion to strike portions of defendants' expert opinion was moot.

A-0867-23

III.

A.

<u>Trial Court Order Granting Defendants' Motion to
Strike Plaintiff's Legal Malpractice Expert Opinion</u>

Because we determine the issues on appeal arise primarily from the trial court's order to strike the opinion of Gern, we begin with plaintiff's argument that the court erred in its findings resulting in the entry of this order. The exclusion or admission of an expert's testimony or report is "committed to the sound discretion of the trial court." <u>Townsend v. Pierre</u>, 221 N.J. 36, 52 (2015) (citing <u>State v. Berry</u>, 140 N.J. 280, 293 (1995)). On review, a trial court's grant or denial of a motion to bar expert testimony is entitled to deference. "[W]e apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 371 (2011).

N.J.R.E. 703 states that an expert's opinion must be based in facts or data "perceived by or made known to the expert . . . ." The net opinion rule is a "mere restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, is inadmissible." <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 524 (1981). An expert's opinion may be deemed a net opinion when the expert "does not demonstrate the soundness of a methodology, both in terms

9

of its approach to reasoning and to its use of data . . . ." In re Accutane Litig., 234 N.J. 340, 400 (2018). An expert must "give the why and wherefore" that supports their opinion, "rather than a mere conclusion." Townsend, 221 N.J. at 54.

[A]n expert witness's conclusions can be based on [their] qualifications and personal experience, without citation to academic literature. State v. Townsend, 186 N.J. 473, 495 (2006) (allowing opinion testimony based on the expert's "education, training, and most importantly, her experience"); Rosenberg v. Tavorath, 352 N.J. Super. 385, 403 (App. Div. 2002) ("Evidential support for an expert opinion is not limited to treatises or any type of documentary support but may include what the witness has learned from personal experience."). "The requirements for expert qualifications are in the disjunctive. The requisite knowledge can be based on either knowledge, training or experience." Bellardini v. Krikorian, 222 N.J. Super. 457, 463 (App. Div. 1988).

Legal malpractice suits are grounded in negligence law and require three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 167 N.J. 414, 425 (2001); Jerista v. Murray, 185 N.J. 175, 190-91 (2005).

A-0867-23

Litigation attorneys owe certain obligations to their clients, such as "investigating the facts, formulating a litigation strategy[,] and filing within a reasonable time any action necessary to effectuate recovery." Brizak v. Needle, 239 N.J. Super. 415, 430 (App. Div. 1990) (quoting Passanante v. Yormark, 138 N.J. Super. 233, 239 (App. Div. 1975)).

Generally, plaintiffs in professional malpractice cases must present expert testimony to prove the defendant failed to satisfy the applicable standard of practice. Rosenberg v. Cahill, 99 N.J. 318, 325 (1985). "Because the duties a lawyer owes to his client are not known by the average juror, a plaintiff will usually have to present expert testimony defining the duty and explaining the breach." Stoeckel v. Twp. of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006).

Because the court provided reasons for its decision in both its August 7, 2023 memorandum of decision concerning defendants' original motion and in its October 10, 2023 memorandum of decision on plaintiff's motion for reconsideration, we summarize the court's reasoning in both decisions for the sake of brevity and consistency. The court's August 7 decision found Gern's report was an inadmissible net opinion for several reasons. The trial court initially reasoned that Gern's report "repeatedly references a standard of care but makes little effort to define what such standard is, how it applies, or convince

11

his audience of the standard's general acceptance within the legal community" and "the majority of Mr. Gern's opinion consists of applying standards which he fails to explain or cite with any authority."

The court further found that Gern's report failed to provide an opinion on proximate cause and damages. In its memorandum of decision, the court stated:

> Determining the likely outcome of a medical malpractice lawsuit undoubtedly exceeds the scope of an average juror's knowledge where he or she receives no guidance on the governing legal principles. Since Mr. Gern failed to opine on these matters altogether, a jury would be left partaking in the exact speculation our law aims to prevent. Accordingly, the expert opinion is incomplete as a matter of law for failure to opine on cause-in-fact.
>
> . . . .
>
> Here, without an expert's valuation of the damages sustained, a jury is left simply guessing the dollar amount equating to years' worth of substandard care regarding the misdiagnosis of an unusual condition and its medicinal treatment. In a case of this nature, precedent suggests that a plaintiff must retain an expert to estimate the value of the injuries incurred for the purpose of aiding a jury. The plaintiff has failed to meet this burden.

In deciding plaintiff's motion for reconsideration, the court expanded its prior findings and found:

> A jury is required to determine on what date the malpractice occurred, or alternatively, determine when

plaintiff learned of the malpractice; then further decide if the suit was brought within the two-year time from either date. Unlike the suggestion of Plaintiff, it is not just a matter of taking a date and determining whether Defendants had filed a suit by that date. Rather, because the parties dispute the specific date that the statute began to run, the jury will be required to conduct a comprehensive examination of Plaintiff's medical history to determine the correct date. The jury will be required to consider the evidence presented at trial and determine the exact date that [plaintiff] terminated her doctor-patient relationship; or the date she found out about the malpractice. Such a determination is not within the "knowledge or experience" of the average layperson. An expert's testimony will be required to aid the jury in figuring out on exactly what date the statute of limitations began to run, and ultimately, expired.

We concur with the trial court's finding that Gern's report, relying on certain rules of professional conduct as the applicable standard of care related to the improper withdrawal of counsel in the underlying medical malpractice matter, was a net opinion. Although Gern's report cited to specific rules of professional conduct, we agree with the trial court that Gern's report failed to provide an opinion that defendants breached a standard of care required by the rules of professional conduct he cited. The report also failed to provide an adequate factual basis concerning how the alleged breach of these rules proximately caused plaintiff's damages. Accordingly, Gern's proffered opinion

that defendants breached a standard of care set forth in the rules of professional conduct he cited was an inadmissible net opinion.

However, we differ with the trial court's determination that Gern's report was an inadmissible net opinion because it did not provide an applicable standard of care concerning defendants' failure to file a timely complaint against all responsible defendants prior to the expiration of the statute of limitations. We conclude Gern's report articulated a standard of care and a factual basis that defendants deviated from that standard of care by failing to file a complaint against Dr. Murphy and Deborah and failing to include Dr. Bey as a defendant within the statute of limitations period. Gern's report opined "standard practice required a speedy and thorough determination and verification of the earliest potential limitations date, by which time the action had to be commenced."

Concerning defendants' failure to include Dr. Bey as a defendant, Gern opined "to be sure, [defendants'] decision not to sue Dr. Bey was ill conceived and contrary to accepted standards." Gern's report further stated

> [o]nce the limitations period expires, the opportunity to sue an unnamed provider is lost (except in extraordinary circumstances not present here; such as where the identity of a responsible provider had not yet been discovered despite due diligence), and therefore, the failure to sue critical parties [such as Dr. Bey] may be fatal to the entire case.

14

In sum, we conclude Gern's report contained the "why's and wherefores" and provided an opinion that the standard of care requires an attorney to file claims naming all responsible defendants within the time required by the applicable statute of limitations.

The trial court also found Gern failed to provide an opinion on proximate cause and damages as further grounds to strike his opinion. The court found "a thorough reading of [Gern's] report shows his failure to consider matters beyond the standard of care" and he "fail[ed] to give a proper opinion regarding the proximate causation of damages."

To establish proximate causation and damages in a legal malpractice action, a plaintiff must first establish causation in fact, which "requires proof that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant." Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996) (quoting Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 295 (App. Div. 1990)). Additionally, a plaintiff "must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of the harm." Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005) (quoting Conklin, 145 N.J. at 419). Finally, the plaintiff must

15

"show what injuries were suffered as a proximate consequence of the attorney's breach of duty," ordinarily measured by "the amount that a client would have received but for the attorney's negligence." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994).

The burden is on the plaintiff to establish proximate causation and damages "by a preponderance of the competent, credible evidence." Finco, 272 N.J. Super. at 488. In legal malpractice cases, proximate causation must ordinarily be established by expert testimony that addresses the particular facts of the case. Vort v. Hollander, 257 N.J. Super. 56, 61 (App. Div. 1992); see also Froom, 377 N.J. Super. at 318; Finco, 272 N.J. Super. at 490.

The conclusion section of Gern's report stated in pertinent part:

> There is no question that Ms. Kashiwakura had strong and substantial medical malpractice claims against Dr. Murphy (and vicariously, Deborah) and Dr. Bey arising from their misdiagnosis upon which she relied, and their improper and unnecessary treatment for a disease (ILD) she did not have. By the exercise of proper and reasonable care, this medical negligence should have been known to them. This conclusion is supported by Ms. Kashiwakura's expert, Dr. Bennett Ojserkis, and corroborated by Beasley's experts who provided Affidavits of Merit, as well as Jubb's own testimony.
>
> It is my opinion, to a degree of legal certainty, that but for the Defendants' errors and omissions, as discussed above, Ms. Kashiwakura would have succeeded against Dr. Murphy (and Deborah), as well as Dr. Bey, had the

16

Beasley Defendants timely sued him in the underlying medical malpractice action and not excluded him as a defendant. His exclusion from the medical malpractice action was inconsistent with the standard of care. (emphasis added).

It is also my opinion that Jubb's reasons for excusing Dr. Bey, his professed strategy or fall back, that Dr. Bey could have been substituted as a John Doe, was inconsistent with the standard of care. Once the two year anniversary of the end date of Dr. Bey's care had passed, which appears to have ended no later than November 15 or 16, 2016, the date when he last saw Ms. Kashiwakura and gave her his last script, Dr. Bey could no longer be added to the case or otherwise sued by Ms. Kashiwakura. The limitations date against Dr. Bey passed before Beasley's motion to withdraw was granted by the February 7, 2019 Order, and incidentally passed before the date that the motion was argued. Moreover, the standard of care would have required the Defendants to not only have consulted with Ms. Kashiwakura before making the November 15, 2021 purported decision to exclude Dr. Bey, but to also advise her of the imminent limitations date for adding or substituting him in as a defendant.

Based on our review of Gern's report, we determine it opined defendants deviated from the standard of care by not filing a timely complaint against all defendants which proximately caused plaintiff's claimed injuries as reflected in Dr. Ojserkis's report. Gern's opinion essentially found "but for" the defendants' failure to file a timely complaint against Dr. Murphy, Deborah, and Dr. Bey prior to the expiration of statute of limitations, plaintiff would have "succeeded"

17

in the underlying medical malpractice action. Gern also specifically opined that defendants' reasons for not including Dr. Bey in the complaint—because he could have been substituted in for a fictitious party—was inconsistent with the legal principles required to preserve such a claim.

Although we conclude Gern's report failed to utilize specific legal terms such as "standard of care," "deviation" and "proximate cause," we determine his report, when read as a whole, adequately sets forth an opinion on the applicable standard of care and a factual basis that defendants deviated from that standard. Concerning proximate cause, Gern's report essentially opines that plaintiff's claims were based on her lost opportunity to recover damages for the alleged medical negligence of Dr. Murphy, Deborah and Dr. Bey because defendants failed to file a timely complaint against them.

We also part ways with the court's determination that plaintiff was required to provide a legal expert opinion quantifying her damages caused by the alleged deviations. We note the opinion of Dr. Ojserkis, plaintiff's medical malpractice expert, was not challenged in the motion proceedings. This report opined Dr. Murphy, Deborah, and Dr. Bey deviated from the standard of care by misdiagnosing plaintiff with ILD and that she suffered damages from injuries

18

caused by her long-term use of prednisone. Dr. Ojserkis lists plaintiff's "adverse disorders" in his report caused by the medical providers' negligence as follows:

> Cushingoid body habitus including moon facies, truncal obesity, Severe weight gain, Steroid myopathy, Severe hyperglycemia manifest as new diabetes mellitus, Candida esophagitis, Tissue friability, a disorder linked to poor wound healing and markedly increased risk for any subsequent surgical procedure, Long-term, chronic adrenal insufficiency due to exogenous suppression of the HPA axis, manifest as episodic hypotension, chronic fatigue, musculoskeletal discomfort [and] Osteoporosis.

He further opined "the deviations . . . to a degree of medical certainty, caused a significantly increased likelihood for and severity of the following conditions she has developed: Fatty liver, Central serous retinopathy, Cataracts, Anxiety [and] Glaucoma."

We conclude that because plaintiff is claiming damages based on a lost opportunity to prosecute her medical malpractice claims in the underlying matter due to defendants' alleged negligence, her legal malpractice expert was not required to specifically opine on the quantity of damages. Dr. Ojserkis opined plaintiff developed "adverse conditions" caused by the medical negligence of Dr. Muphy, Deborah, and Dr. Bey. Here, defendants' negligence, if proved, deprived plaintiff of the opportunity to obtain a fair and just verdict —a judgment awarding fair and reasonable compensation for all the injuries and

19

economic losses she suffered as a result of the underlying negligent medical treatment. Such harm is compensable. The claimed damages are the difference between no damages —resulting from plaintiff being barred from pursuing her claims because of defendants' alleged negligence— and the amount, if any, determined by a jury, if her claims are proven. While the amount of damages would remain for a jury to decide, we deem it self-evident that failing to file a colorable claim within the statute of limitations due to negligence is the direct cause of the loss of an opportunity to recover damages.

Defendants cited and the trial court relied upon Morris Properties, Inc. v. Wheeler, 476 N.J. Super. 448 (App. Div. 2023), to strike Gern's opinion. In Morris Properties we held in a legal malpractice matter an expert opinion was required to prove an attorney's negligence was the proximate cause or a substantial factor in plaintiff accepting a settlement less than its full value and plaintiff would have succeeded in obtaining a better result at trial. Id. at 460-461. We determined since the legal negligence expert only provided an opinion concerning the standard of care and failed to opine on the required element of proximate cause, such opinion was an inadmissible net opinion. Id. at 463. We also concluded in Morris Properties that the suit within a suit procedure was a

procedural choice that did not relieve the plaintiffs of their substantive, prima facie burden of establishing proximate cause.  Ibid.

Here, unlike Morris Properties, we have determined Gern's report adequately opined defendants' alleged negligence proximately caused her to be foreclosed from pursuing damages for her injuries in the underlying medical malpractice matter.  Therefore, we conclude that defendants' reliance on Morris Properties is unavailing.

In addition, because we have determined Gern's opinion was not a net opinion and should not have been stricken, the denial of plaintiff's motion for reconsideration of the court's prior order striking Gern's opinion was also a misapplication of its discretion.

B.

Plaintiff's Argument the Trial Court Erred by Not Permitting Her to Prove Proximate Cause and Damages as Part of a Suit within a Suit Methodology.

We now address plaintiffs' argument that the trial court improperly rejected plaintiff's "case within a case" methodology to prove proximate cause and damages.[3]  Because we have previously determined Gern's report adequately

---

[3]  Our case law also refers to this methodology as a "suit within a suit." We reference this methodology as "suit within a suit" hereinafter for purposes of consistency.

opined on proximate cause, we only address plaintiff's argument that damages can be proven at trial through a "case within a case" methodology and it was unnecessary for Gern to specifically opine on the quantum of damages. We agree.

Most commonly, legal malpractice plaintiffs must litigate a "suit within a suit" by presenting "evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004). In this type of litigation, the plaintiff must prove "by a preponderance of the evidence that (1) [s]he would have recovered a judgment in the action against . . . defendants, (2) the amount of that judgment, and (3) the degree of collect[a]bility of such judgment." Ibid. (quoting Hoppe v. Ranzini, 158 N.J. Super. 158, 165 (App. Div. 1978)).

Here, Gern's opinion when considered in addition to the opinion of plaintiff's medical expert, Dr. Ojserkis, clearly provide that but for defendants' breach of the standard of care through their failure to file a timely complaint against all appropriate medical providers, plaintiff was foreclosed from a jury determination of damages caused by the breach. We conclude plaintiff is entitled to a determination of damages by a jury based on the evidence she produces at trial through her "suit within a suit" methodology.

22

We further observe our Court has found, "[i]n some situations, a 'suit within a suit' cannot accurately reconstruct the underlying action." Id. at 359 (quoting Developments in the Law—Lawyers' Responsibilities and Lawyers' Responses, 107 Harv. L. Rev. 1547, 1568-69 (1994) (discussing complications of reconstructing original lawsuit); Polly A. Lord, Comment, Loss of Chance in Legal Malpractice, 61 Wash. L. Rev. 1479 (1986) (same). Sometimes "[p]arties must cope with the disadvantage of not having the same access to evidence or of having evidence grow stale with the passage of time." Ibid. (quoting Paul Gary Kerkorian, Comment, Negligent Spoliation of Evidence: Skirting the "Suit Within a Suit" Requirement of Legal Malpractice Actions, 41 Hastings L.J. 1077 (1990)).

We determine the above concerns with the "suit within a suit" methodology do not exist in this matter. In fact, plaintiff has made the choice to try this matter under the "suit within a suit" methodology despite the above concerns.

> In the absence of a disagreement requiring court intervention, a plaintiff is free, as in any case, to approach the trial as [they see fit], so long as the Rules of Court and Rules of Evidence are satisfied. Where the matter is presented to the court because the defendant interposes a legal objection to the plaintiff's proposed trial strategy, it is within the court's discretion

to declare an appropriate trial model. That is the backdrop for our inquiry.

[Garcia, 179 N.J. at 361.]

We also point out that the record does not reveal any specific objections were made to the "suit within a suit" trial methodology chosen by plaintiff. However, we note the court's October 10, 2023 decision touches on this issue:

> We recognize the Model Jury Charge 5:51A suggests that plaintiffs pursue a "suit within a suit" approach at trial. Applied here, however, a jury would be "hopelessly confused" in being asked to distinguish and resolve two separate and distinct cases within a single trial. Moreover, Model Jury Charge 5:51A fails to account for the above case law.

To the extent that the trial court's finding was rejecting the "suit within a suit" methodology chosen by plaintiff, we conclude this was a misapplication of its discretion. We differ with the trial court's finding that a jury would be "hopelessly confused" by this widely accepted trial methodology for legal malpractice claims. On this record we do not discern any impediments to the "suit within a suit" methodology preferred by plaintiff.

C.

Trial Court's Grant of Summary Judgment to Defendants

We next turn to plaintiff's argument that the court's grant of summary judgment to defendants was error. Summary judgment is appropriate when "the

24

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2(c)). A genuine issue of material fact exists when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540. Appellate courts review summary judgment rulings de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017).

The trial court based its summary judgment decision on its prior order striking plaintiff's legal expert opinion by finding an expert opinion was required to prove her legal malpractice claims. Because we have reversed the underlying order striking Gern's opinion, we also are compelled to reverse the trial court's summary judgment determination. We conclude genuine issues of material fact exist concerning whether defendants breached a duty of care by allegedly failing to file a timely complaint against all responsible medical providers which proximately caused plaintiff's alleged damages.

A-0867-23

IV.

We now turn to the remainder of the outstanding issues in this appeal. Because we have determined the trial court order striking plaintiff's legal malpractice expert opinion was a misapplication of discretion, we affirm its denial of plaintiff's motion for reconsideration related to the common knowledge doctrine as moot. We are further constrained to remand plaintiff's cross-motion for partial summary judgment on liability for the court to determine on the merits, since this issue is no longer moot based on this opinion. Thus, we vacate the trial court's order denying, on mootness grounds, plaintiff's motion to strike defendant's legal expert report and remand this motion to the trial court for a determination on its merits. We also affirm the trial court's order denying plaintiff's motion to permit her to produce a revised legal malpractice expert report as moot based on our opinion.

We remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

26

A-0867-23